580 So.2d 935 (1991)
SUCCESSION OF Marjorie Palmer McLEAN.
Nos. 22378-CA and 22682-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
Writ Denied September 6, 1991.
*937 Mills, Timmons & Flowers by Robert A. Thrall, Shreveport, for appellant, John H. Litzler-Bankruptcy Trustee.
Arter & Hadden by Brenda H. Collier, Dallas, Tex., Special Counsel for John H. Litzler-Trustee in Bankruptcy for Harvey D. McLean, Jr.
Sessions & Fishman by Max Nathan, Jr., New Orleans, for mover-appellee, Mary McLean Obering-Trustee of The Harvey D. McLean, Jr. Trust.
James A. Van Hook, Shreveport, for appellee, Mary Amanda McLean Obering.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
John H. Litzler (Litzler), Trustee in Bankruptcy for Harvey D. McLean, Jr. (McLean), appeals a judgment of March 1, *938 1990 authorizing a partial funding, over Litzler's objection, of the Harvey D. McLean, Jr. Trust (McLean Trust) with a residual bequest of Exxon stock in the succession of McLean's mother, Mrs. Marjorie McLean. Litzler also appeals a separate judgment in the same suit signed June 21, 1990 authorizing a further funding of the McLean trust with a residual bequest of all remaining succession assets except cash; declaring that the McLean Trust is a valid and enforceable spendthrift trust; and ruling that the debts asserted by Litzler and another creditor are not judgments for which seizure of trust assets are permitted pursuant to La.R.S. 9:2005(3). Devolutive appeals nos. 22,378 and 22,682 were granted on these respective judgments. The appeals were consolidated and are both before us for resolution. For the reasons expressed, we affirm.

FACTS
The facts for both appeals are as follows: Mrs. McLean died on March 10, 1988, leaving an estate with a range of assets from considerable oil and gas interests to substantial stock holdings in the Exxon Corporation. She had two children: Harvey D. McLean, Jr. and Mary Amanda McLean Obering. Mrs. McLean's statutory will made various specific bequests not germane to these appeals. The will also made a specific bequest of $500,000 to Mrs. McLean's granddaughter by Obering, subject to Obering's usufruct; and one of $500,000 to her four grandchildren by McLean, subject to spendthrift trust provisions (the Grandchildren's Trust). Of the residue, the will gave one-half to Obering and one-half to a trust for the benefit of McLean (McLean Trust). This trust, which is made subject to maximum spendthrift provisions, is the crux of the controversies herein.
The will was probated in March 1988. In January 1989 McLean was placed in bankruptcy. Litzler was ultimately named trustee of McLean's bankruptcy estate. The will named McLean as trustee of both the Grandchildren's Trust and the McLean Trust. At the time of the bankruptcy petition, McLean had not accepted either trusteeship. Afterwards, on March 23, 1989, he executed a written acceptance of trusteeship of the Grandchildren's Trust and a written renunciation as to the McLean Trust.

PROCEDURAL HISTORY FOR APPEAL NO. 22,378
The involuntary bankruptcy proceeding was filed against McLean January 12, 1989 and the U.S. Bankruptcy Court granted relief under Chapter 7 on February 7, 1989. The petitioning creditor, FSLIC as receiver for Vernon Savings & Loan of Dallas (now the FDIC) asserted a claim of over $27 million against McLean. The FDIC intervened in these succession proceedings. Litzler also intervened to respond to Obering's first annual accounting.
On November 2, 1989, Obering, individually and as executrix, filed a petition for partial judgment of possession of succession assets. On the same date, Obering, as trustee of the McLean Trust, filed for authorization for Obering, as executrix, to deliver one-half of the Exxon shares remaining in the Succession to herself, as trustee for the McLean Trust.
On December 1, 1989 judgments were signed authorizing Obering to dispose of sufficient Exxon shares to fund all bequests except the residual bequest to the McLean Trust. A rule was ultimately set for February 7, 1990 to hear the request, in effect, to fund the McLean trust with the Exxon shares in accord with the will.
Litzler and the FDIC filed exceptions of prematurity, lack of procedural capacity, no cause of action and no right of action to the February 7 hearing. After arguments by the attorneys, the court gave oral reasons and concluded that to fund a trust, there must first be a valid trust to fund. An order and judgment of partial possession was signed March 1, 1990 overruling all of the exceptions and authorizing Obering, as executrix, to deliver to Obering, as trustee, all remaining shares of Exxon Corporation owned by the succession. The bankruptcy trustee appeals this judgment and assigns the following errors:
(1) The trial court erred in presuming that there were no pleadings or proceedings *939 to raise the issues of the validity of the trust itself or the spendthrift provisions thereof.
(2) The trial court erred in presuming the validity of the trust itself.
(3) The trial court erred in presuming that the spendthrift provisions of the trust were valid; and
(4) The trial court erred in failing to sustain appellant's peremptory exception of no right of action.

DISCUSSION
At the outset, we address whether the validity of the trust, its spendthrift provisions, or the issues raised by the exceptions can be appealed. The judgment signed February 7, 1990 orders that:
Mary McLean Obering, as Executrix of the Succession of Marjorie Palmer McLean, be and hereby is authorized to partially pay the legacy to Mary McLean Obering, as Trustee of the Harvey D. McLean, Jr. Trust by delivering unto said Trustee all of the remaining shares in Exxon Corporation currently belonging to the Succession. (emphasis added) Tr. 268, 269.
By ordering a partial funding of the Mclean Trust, the judgment implicitly finds that there is a valid trust to fund; therefore we will first address the assignments of error concerning the validity of the trust.
Appeal is from the judgment rather than the court's oral reasons. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir.1987), and citations therein. Though the trial court may have orally suggested that trust's spendthrift provisions are valid, the judgment itself does not address, either implicitly or expressly, the spendthrift nature of the McLean Trust. Thus, the issue of the spendthrift nature of the McLean Trust is not before us in this appeal and we pretermit discussion of the portion of assignment # 1 concerning the spendthrift provisions and assignment # 3.
In addition, the overruling of peremptory exceptions of no right of action and no cause of action are interlocutory judgments and not appealable absent showing of irreparable harm. Bush Const. Co., Inc. v. Carr, 512 So.2d 493 (La.App. 1st Cir.), writ denied 514 So.2d 1175 (1987); Belser v. St. Paul Fire & Marine Ins. Co., 492 So.2d 198 (La.App. 1st Cir.1986); Updegraff v. Parish of St. Bernard, 433 So.2d 863 (La.App. 4th Cir.1983). Litzler has presented no evidence of irreparable harm. The judgment as to these exceptions is not, strictly speaking, appealable. However, because the resolution of the issues presented on the partial funding of a valid trust are so interrelated with the issues presented by the exceptions of no cause and no right of action raised in this case, we will consider those issues.
In assignment # 1, Litzler argues the trial court erred in presuming the validity of the trust on the grounds that no pleadings raised this issue in the summary proceeding. The court stated orally that the pleadings, other than the exceptions, did not reflect an attack on the validity of the trust on its face. It presumed the provisions of the last will and testament were valid because there was no reason to presume otherwise; it could find no legal basis not to fund the trust and rendered judgment accordingly.
The rule to show cause was filed November 2, 1989 and the hearing did not occur until February 7, 1990. Despite this long period, counsel for Litzler did not attempt to put on any evidence at the hearing. Rather, his attorneys advanced numerous legal arguments: (1) the action was premature; (2) there was no spendthrift trust to fund; (3) merger or confusion occurred extinguishing the trust; (4) right to accept the trusteeship belonged only to Litzler as bankruptcy trustee; and (5) McLean accepted his trusteeship either in writing or by acts sufficient to constitute negotorium gestio. The court overruled these exceptions and seems to have further ruled, although it is unclear from the record, that it presumed the validity of the trust and its spendthrift nature because no pleadings were filed on these issues.
A rule to show cause is a summary proceeding which obliges one to show, but *940 not plead, cause. Affirmative defenses which must be pleaded in an answer in ordinary proceedings need not be pleaded in summary proceedings where no answer is required. Brooks v. Brooks, 469 So.2d 378 (La.App. 2d Cir.1985). We conclude that Litzler need not answer to raise the issues presented before the court in a rule to show cause. We will give full consideration to Litzler's arguments even though he made no effort to present evidence at this hearing.
In assignment # 2, Litzler argues the court erred in presuming the validity of the trust on various grounds. As we perceive his arguments, he claims that since McLean was named in the testament as first trustee of the McLean Trust, McLean had title to the trust property until he declined to serve. He further argues that McLean did, in fact, accept the trusteeship in writing or, in the alternative, that McLean's actions were sufficient to constitute acceptance in accordance with the theory of negotorium gestio.
Litzler first argues that confusion extinguished the trust by operation of law. This argument is based on Litzler's assumption that when the same person serves as both trustee and beneficiary, the Civil Code concept of confusion extinguishes the trust. La.C.C. art. 1903. Since McLean was named as trustee and beneficiary in the will, the argument goes, the trust was void ab initio. Needless to say there is no Trust Code authority for this theory, and we doubt that a trust can be extinguished as simply as an obligation.
Under the Louisiana Trust Code, a testamentary trust is created at the moment of the settlor's death, without awaiting the trustee's acceptance of the trust. La.R.S. 9:1821. Acceptance must be in writing and, once accepted, is retroactive to the date of creation of the trust. La.R.S. 9:1823, 1824; Jackson v. D'Aubin, 338 So.2d 575, 580 (La.1976). It is in this manner that title to property in a trust is transferred from settlor to trustee. La. R.S. 9:1781; Reynolds v. Reynolds, 388 So.2d 1135 (La.1980) (on rehearing); Succession of Hines, 341 So.2d 42 (La.App. 3d Cir.1976). A trust may come into being without transfer of legal interest to any particular trustee, but the trusteeship of a particular trust cannot begin until he has been given a property interest. Bogert, Trusts and Trustees § 141 (2d ed. 1979).
The record indicates that McLean never accepted the trusteeship in writing and, in fact, declined acceptance of the McLean Trust by letter dated March 23, 1989; Obering accepted the position of trustee of the McLean Trust by oath signed October 30, 1989. Since the written acceptance by Obering was retroactive to the date of the creation of the trust, March 10, 1988, it is obvious that title to the trust property was never transferred to or vested in McLean as a matter of law.
Moreover, codal authority provides that a trust shall be interpreted to sustain the effectiveness of its provisions if it is susceptible of such an interpretation. La. R.S. 9:1753. The Trust Code further provides:
§ 2251. Severability of Provisions of Trust Instrument
If a provision in the trust instrument is invalid for any reason, the intended trust does not fail, unless the invalid provision cannot be separated from the other provisions without defeating the purpose of the trust.
The will plainly indicates that Marjorie's purpose was to establish a valid spendthrift trust with McLean as beneficiary. Even if we were to find that McLean's designation in the will as first trustee invalidated the trust instrument on its face, § 2251 would require us to sever the offending provision. We would cure the deficiency by deleting McLean's nomination as first trustee and give effect to the alternative nomination of Obering. She, in fact, accepted the position of trustee in this record. The nomination of McLean in the will as first trustee and beneficiary of the trust does not render the trust invalid or unenforceable under the doctrine of confusion by operation of law.
Litzler also argues that despite McLean's formal renunciation in March 1989, *941 McLean actually gave a written acceptance on October 20, 1988 in an answer to an interrogatory signed by McLean and filed in a separate proceeding. This answer is not part of the instant record, but both parties concede in brief that it may be considered. The answer states:
Co-executors do not have and never had under their control, directly or indirectly, any money, rights, credits or other property belonging to "McLean", or in which he had an interest, except to the limited extent that "McLean" might have a claim for out-of-pocket expenses incurred in connection with his duties as co-executor of this succession or for fees as executor, if he claims such fees; otherwise any money, rights, credits or other property in the possession of co-executors could not, in their opinion, be subject to any claim by "McLean" except in the fiduciary capacity of Trustee of spendthrift trusts established by the will of his mother which said will is shown in the aforesaid Succession of Marjore Palmer McLean and is incorporated in these answers and made a part hereof by reference. (emphasis added) Obering's original brief, p. 6.
The plain terms of this answer to interrogatory do not indicate acceptance of the trusteeship by McLean. Rather, it admits that McLean could, if he so wished, accept the trusteeship, which is no greater right than the will and the trust code would bestow. It shows no actual acceptance of the office of trustee of the McLean Trust.
Litzler next argues that McLean accepted the office of trustee by means of quasi-contract or negotorium gestio. However, despite Litzler's contentions that McLean "may well have engaged in conduct" sufficient to support a finding of negotorium gestio, we see no evidence of such conduct presented in this record. Even if such conduct were shown, we find that the trust code mandates that a person accepting trusteeship must do so in writing. La.R.S. 9:1824. Since this record does not indicate that McLean accepted the trusteeship of the McLean Trust in writing, but instead proves the contrary, there is no evidence that McLean served as trustee and Litzler's theory of confusion does not apply. We conclude that the instrument was a valid trust which could be funded and that the implicit finding of the judgment to that effect is not in error. Therefore, the fact that the trial court may have expressed the validity of the trust as a "presumption" is of no moment. This assignment does not present reversible error.
In assignment # 4, Litzler argues that Obering had no right to accept the position of trustee. All legal or equitable interests of the debtor in property as of the commencement of the bankruptcy, January 12, 1989, are included in the property of the estate. Bankruptcy Code, 11 U.S.C. § 541(a)(1). Litzler argues that Louisiana recognizes rights personal to the debtor as part of the bankruptcy estate. Succession of Hurd, 489 So.2d 1029 (La.App. 1st Cir. 1986). The right to accept the trusteeship, he urges, is a property right of the bankruptcy estate and only Litzler had the right to either accept or decline it; therefore, Obering's acceptance of the trusteeship was invalid.
A trustee holds title to trust property. La.R.S. 9:1781. This title gives the trustee a legal interest. Bogert, op. cit., § 146. The Bankruptcy Code further provides, at § 541(d):
Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest * * * becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
Bankruptcy courts are split on whether a trusteeship is "property of the bankruptcy estate." In Re Steffan, 97 B.R. 741 (Bky. N.D.New York, 1989); In Re Kreiss, 72 B.R. 933 (Bky.E.D.New York, 1987); In Re Wyatt, 6 B.R. 947 (Bky.E.D.New York, 1980).
However, we need not reach this issue. The issue presented directly to us is whether the right to accept the office of trustee is a "property interest" subject to the *942 bankruptcy estate. Absent a federal provision to the contrary, a debtor's interest in property is determined by applicable state law. In Re Atchison, 925 F.2d 209 (7th Cir.1991); Goff v. Taylor, 706 F.2d 574 (5th Cir.1983).
Creditors may exercise all patrimonial rights and actions of their debtor except those that are strictly personal. La. C.C. art. 2044; Belcher and Creswell v. Johnson, 114 La. 640, 38 So. 481 (1905); Yiannopoulos, Property § 128, 2 La.Civil Law Treatise (2d Ed.1980). A trustee's interest cannot be taken for the benefit of his creditors and would be of no value if it could be used by the creditors. Bogert, op.cit., § 146.
Codal authority recognizes that there are some rights of the debtor which the creditor cannot exercise in the debtor's stead, i.e., obliging the debtor to accept a donation inter vivos or to call on co-heirs to collate. La.C.C. art. 1991 (1870).[1] "If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor." La.C.C. art. 2044. Strictly personal rights and actions, though patrimonial in nature, are so closely connected with the personality of the debtor that they cannot be exercised by third persons. Yiannopoulos, op. cit., § 128.
McLean's right to accept the trusteeship of the McLean Trust was strictly personal. We distinguish Hurd, supra, which holds that a debtor's right to demand collation is part of the bankruptcy estate. The patrimony of a debtor is the totality of his assets and liabilities susceptible of pecuniary evaluation. Hastings v. Dinning, 314 So.2d 744 (La.App. 3d Cir.1975).
The right to demand collation, although personal, is susceptible of pecuniary evaluation. The right to accept a trusteeship, a position of fiduciary obligation, is insusceptible of pecuniary evaluation and so personal in nature that it is not subject to the bankruptcy estate. Moreover, we note that although Litzler argues a trusteeship has pecuniary value, he has apparently made no effort to seize the trusteeship of the Grandchildren's Trust; in fact, he consented to fund it. Therefore, Litzler's argument that Obering had no right to act on behalf of the McLean Trust is without merit.

PROCEDURAL HISTORY FOR APPEAL NO. 22,682
On April 25, 1990 Obering, as trustee of the McLean Trust, filed a rule to show cause, in effect, to fund the trust with all remaining succession assets in accordance with the will, to declare the McLean Trust as a valid spendthrift trust, and to declare the trust property protected against certain claims. Litzler and the FDIC filed exceptions urging insufficient service of process, lack of jurisdiction over subject matter, unauthorized use of summary proceeding, no right of action and no cause of action.
At the hearing on June 21, 1990 the court stated that inherent in the order and judgment of March 1 was an implicit recognition that the trust is valid. It found jurisdiction of the trial court was not divested by Litzler's appeal of the March 1 judgment, concluding that it could now rule on the spendthrift nature of the trust.
Judgment was signed June 21, 1990 overruling all exceptions; authorizing Obering, as executrix, to pay Obering, as trustee of the McLean Trust, all remaining succession assets (except cash); declaring the trust to be a valid and enforceable spendthrift trust; and declaring that the debts asserted by Litzler and the FDIC are not judgments for which seizure of McLean Trust assets, income or principal, is permitted.
On appeal, Litzler assigns as error:
(1) The trial court erred in failing to sustain appellant's declinatory exception of lack of subject matter jurisdiction.
(2) The trial court erred in failing to sustain appellant's dilatory exception of improper use of summary proceedings.

*943 (3) The trial court erred in failing to sustain appellant's peremptory exception of no right of action.
(4) The trial court erred in concluding that the trust is a valid and enforceable spendthrift trust.
(5) The trial court erred in excluding the testimony of James Van Hook on the grounds that his testimony regarding communications from Obering, his client, were subject to attorney/client privilege.
Litzler does not contest the portion of the judgment declaring that the debts asserted by himself and the FDIC are not judgments for which seizure of McLean Trust assets is permitted.

DISCUSSION
Litzler argues that his devolutive appeal of the March 1, 1990 judgment divested the trial court of jurisdiction to consider the issues presented by the rule filed April 25, 1990. The divesting of the trial court's jurisdiction is governed by La.C. C.P. art. 2088, which provides in part:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested * * * on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal[.] * * *
As noted earlier, appeal lies only from the judgment rather then the court's oral reasons. Hardin, supra. The March 1 judgment ordered Obering, as executrix, to "partially pay the legacy to Mary McLean Obering, as Trustee of the Harvey D. McLean, Jr. Trust by delivering unto the said Trustee all of the remaining shares in Exxon Corporation currently belonging to the Succession." Tr. 268, 269.
The matter reviewable on that appeal was the simple validity of the McLean Trust and delivery of Exxon shares to its trustee. The issues raised in this appeal are distribution of all remaining succession assets (except cash) and the spendthrift nature of the McLean Trust. The matters presented at the second hearing were simply not the same as those reviewable from the first. The trial court had jurisdiction to consider these matters and was not divested of jurisdiction. These matters are properly before us on appeal.
In assignment # 2, Litzler argues that the petition seeks a declaratory judgment that the McLean Trust is a valid spendthrift trust and that such a declaratory judgment is not within the parameters of summary proceedings.
§ 2233. Instructions
A. A trustee, a beneficiary, or a settlor in an ordinary or summary proceeding may apply to the proper court for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust.
The trial court, in oral reasons, stated that a declaratory judgment as to the issues of this rule fall within the parameters of R.S. 9:2233. The relief sought, further funding of the trust as a spendthrift trust concerns both the interpretation of the trust instrument and its administration. Thus, we conclude that summary proceedings were appropriate.
The substance of assignment of error # 3 is essentially the same as that advanced in assignment # 4 of appeal no. 22,378. We determined that argument to lack merit; for the same reasons it does not present reversible error here.
In assignment of error # 4, Litzler argues that the court erred in presuming the spendthrift nature of the trust. The requirement to establish a spendthrift trust is provided by the Trust Code:
§ 2007. Use of Words "Spendthrift Trust"
A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a "spendthrift trust" is sufficient to restrain alienation by a beneficiary of the interest to the maximum extent permitted by this Subpart. (emphasis added)
In addition, R.S. 9:2002 provides for a trust in which the beneficiary's interest shall not be subject to voluntary or involuntary *944 alienation by a beneficiary. However, only the restraint upon voluntary alienation is valid; the restraint upon involuntary alienation is subject to limitations of the subpart, R.S. 9:2001-9:2007. Mrs. McLean's will establishes the McLean Trust as a spendthrift trust and subjects the beneficiary to the maximum restraints permitted by Louisiana law against voluntarily or involuntarily alienating any interest in the trust. Thus, Mrs. McLean's bequest has sufficiently provided the necessary requirements to establish a spendthrift trust.
Litzler argues that it is still not a spendthrift trust because it makes the same person beneficiary and trustee; thus, the substantive restrictions of a spendthrift trust are illusory. However, we do not reach this issue on the record before us. As determined previously, Obering, rather than McLean, accepted the office of trusteeship for this trust. Therefore, one person is trustee and another is principal and income beneficiary.
In addition, as we noted in appeal no. 22,378, McLean's nomination in the will as trustee is severable to uphold Mrs. McLean's testamentary purpose, setting up a spendthrift trust with McLean as beneficiary; thus, the spendthrift nature of the trust is not destroyed by giving McLean the right, in effect, to accept the trusteeship of the McLean Trust. Restrictions on alienation in the spendthrift trust before us are not illusory. The McLean Trust is in fact a valid and enforceable spendthrift trust.
In assignment of error # 5 Litzler contests the court's exclusion of testimony from Mr. James Van Hook, attorney for Obering, regarding attorney/client communications with Obering. At the June 21 proceeding, Litzler's counsel sought to elicit testimony from Van Hook about the influence McLean may have exercised over Obering in her capacities of executrix or trustee. Objections to these questions were entered on grounds of attorney/client privilege. Litzler argues the testimony is relevant to show that despite McLean's formal renunciation he was acting as a de facto trustee; thus the trust was destroyed by confusion. He also argues that the attorney/client privilege does not apply because the communication involves fraudulent activity.
We have previously determined in appeal no. 22,378 that parol evidence is insufficient to overcome a written document declining the position of trustee. La.R.S. 9:1824. Since this record presents no written evidence of acceptance of the trusteeship by McLean, we find this line of questioning irrelevant for what Litzler sought to prove.
Moreover, La.R.S. 13:3734.3 provides:
No attorney or counselor at law shall give evidence of anything that has been confided to him by his client, without the consent of the client, but his being employed as a counselor or attorney does not disqualify him from being a witness in the cause in which he is employed. (emphasis added)
This record presents no evidence that Obering ever authorized Van Hook to discuss any of their confidential attorney/client conversations. Therefore, even if the evidence were relevant, it would be inadmissible because of the privilege.
Litzler argues, without any evidentiary basis, that if Obering participated in a "scheme to defraud" McLean's creditors, then her conversations with her attorney are not subject to the privilege. In support he cites Succession of Bonner, 192 La. 299, 187 So. 801 (1939). In that case we note that a prospective attorney/client relationship never developed so the privilege was not, strictly speaking, applicable. Furthermore, Litzler might have laid a foundation for showing fraud by calling McLean or Obering to testify. He did not do so, and now argues he should have had unbridled permission to question Mr. Van Hook about a conjectural "scheme to defraud." We find his argument to be circular and without merit. No evidence of a scheme to defraud the creditors of McLean is presented by this record; rather, McLean and Obering availed themselves of the lawful provisions of their mother's will. The attorney/client *945 privilege was properly upheld by the trial court.

CONCLUSION
We conclude that the trial court did not err in the March 1, 1990 judgment partially funding the McLean Trust or its implicit finding that a valid trust existed. Litzler's argument of confusion has no merit. The trust never ceased to exist because of confusion, if such a result were possible, because McLean was never vested with the title of trustee. Litzler's argument that only the bankruptcy trustee has the right to accept the trusteeship of the McLean Trust also has no merit. The right to accept the trusteeship of this spendthrift trust was not the property of the bankruptcy estate, thus Obering properly accepted the office of trustee.
We also conclude that the trial court did not err in the June 21, 1990 judgment because it was not divested of subject matter jurisdiction to fund the trust with additional assets and interpret it to be a valid spendthrift trust. Finally, we conclude the trial court did not err in finding part of Van Hook's testimony to be privileged. The trial court judgments of March 1, 1990 and June 21, 1990 are affirmed.
Costs of this appeal are assessed to the appellee, John H. Litzler, Trustee in Bankruptcy for Harvey D. McLean, Jr.
AFFIRMED.
NOTES
[1] La.C.C. art. 1991 (1870) was amended and reenacted as La.C.C. art. 2044 by 1984 La.Acts No. 331, § 1. The comments to art. 2044 state that it does not change the previous law.