WELCH, J.
 

 1 {¡This is an appeal by the plaintiffs, Eva Taylor, Kevin Ledet, and Jesse Foret,
 
 [1]
 
 from a judgment granted in favor of defendants, Camille E. Saltz Babin; Camille E. Saltz, A Professional Law Corporation; Joan Malbrough; Joan Malbrough & Associates, A Professional Law Corporation; Jerri G. Smitko; and The Law Office of Jerri G. Smitko, A Professional Law Corporation. The judgment sustained the defendants’ peremptory exceptions raising the objections of no right of action or interest to institute suit and/or no cause of action, and dismissed the plaintiffs’ claims with prejudice. The defendants’ peremptory exceptions raising the objections of prescription and no cause of action were likewise granted, dismissing with prejudice the claims of Taylor and Ledet, and also those of Jesse and Michelle Foret asserted in the first amended petition for damages. For the following reasons, we affirm.
 

 I. FACTUAL AND PROCEDURAL HISTORY
 

 This is a legal malpractice action. The alleged legal malpractice arose in connection with litigation stemming from a motorboat accident that occurred on July 5, 2003.
 
 [2]
 
 On that date, Eva Taylor and Kevin Ledet were passengers in a motorboat operated by Jesse Foret. Foret drove the watercraft into a rock levee while traversing the waterway connecting Bayou Decade to Lake Jug in Terrebonne Parish. Upon impact, all three occupants were thrown overboard and sustained serious injuries.
 

 Following the accident, Foret was arrested and charged with vehicular negligent injuring. He later pled guilty to charges of vehicular negligent injuring |sand first degree vehicular negligent injuring and was sentenced to a combination of home and weekend incarceration that allowed him to go to work during the week. He was also ordered, as part of his sentence, to pay Taylor and Ledet $10,000 each in restitution. Foret had retained Jerri G. Smitko and the Law Offices of Jerri G. Smitko, APLC (“Smitko”) to represent him in connection with the criminal charges. Subsequently, Taylor and Ledet filed two separate civil suits, which were later consolidated, against Foret in the 32nd Judicial District Court. Smitko also represented Foret in those two consolidated cases.
 

 Foret did not have liability insurance that would have compensated Taylor and Ledet for the injuries they sustained as a result of the motorboat accident. As such, Foret retained additional counsel, Camille Saltz Babin (“Babin”), who at the time was employed by Joan Malbrough
 
 &
 
 Associates, APLC (“Malbrough”), to file a voluntary petition in bankruptcy court in the Eastern District of Louisiana under Chapter 7,11 U.S.C. § 101.
 
 [3]
 

 
 *636
 
 Taylor and Ledet filed a separate adversary complaint in bankruptcy court to determine the dischargeability of their claims against Foret. Taylor and Ledet asserted that their claims against Foret were non-disehargeable in bankruptcy pursuant to Section 523
 
 of
 
 Title 11 of the United States Code.
 
 [4]
 
 On October 7, 2004, the bankruptcy court signed and entered a consent order based upon “joint consent submitted by all parties represented herein,” declaring For-et’s alleged debt to Taylor and Ledet non-dischargeable under 11 U.S.C.A. § 523(a)(9) and lifting the automatic stay of Taylor and Ledet’s state court lawsuits against Foret.
 

 |/Thereafter, a bench trial on liability alone was held in the 32nd Judicial District Court for the Parish of Terrebonne. For-et was found to have negligently caused the boating accident that injured Taylor and Ledet and to have been intoxicated at the time of the accident. However, the trial court did not find Foret’s actions to be wanton or reckless.
 
 [5]
 
 Judgment was entered accordingly on February 6, 2006, and Foret, still represented by Smitko, devolutively appealed. This court unanimously affirmed on June 8, 2007.
 
 See Taylor v. Foret,
 
 2006-1945, 2006-1946 (La. App. 1st Cir.6/8/07), 958 So.2d 1217(unpublished),
 
 writ denied,
 
 2007-1411 (La.10/5/07), 964 So.2d 943.
 

 The argument that legal malpractice was committed is based on the assertion that at the time the consent order was signed in bankruptcy court, 11 U.S.C.A. § 523(a)(9) did not apply to the claims made by Taylor and Ledet. It was alleged that Saltz, Smitko, and Malbrough failed to adequately research whether 11 U.S.C.A. § 523(a)(9) applied to the claims made by Taylor and Ledet. In light of the trial court’s ruling that Foret did not act in a wanton or reckless manner, it was alleged that the claims of Taylor and Ledet
 
 were dischargeable
 
 pursuant to Title 11 of the United States Code.
 

 The petition in the instant suit alleges that on September 22, 2006, Foret discovered that the defendants had committed malpractice.
 
 [6]
 
 The petition further alleges that Foret assigned his legal malpractice claims against defendants and their respective law corporations to Taylor and Ledet. Defendants filed various exceptions, but primarily objected to the petition on the basis that the plaintiffs had no right of action to bring this lawsuit, because legal malpractice claims are not assignable under Louisiana law. Thereafter, plaintiffs amended the petition to add | Jesse and Michelle Foret as plaintiffs and to bring a new claim for mental anguish.
 
 [7]
 
 
 *637
 
 Following this amended petition, the defendants filed exceptions raising the objections of no cause of action, prescription, and vagueness. By judgment signed on December 5, 2007, the trial court sustained the exceptions, and this appeal followed.
 

 II. NO RIGHT OF ACTION
 

 A. General Legal Precepts
 

 The objection of no right of action tests whether the plaintiff, who seeks relief, is or is not the person in whose favor the law extends a remedy.
 
 Howard v. Administrators of Tulane Educational Fund,
 
 2007-2224, p. 16 (La.7/1/08), 986 So.2d 47, 59. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.
 
 Reese v. State Department of Public Safety and Corrections,
 
 2003-1615, pp. 2-3 (La.2/20/04), 866 So.2d 244, 246.
 

 B. Assignability of Legal Malpractice Claims
 

 In this case, the defendants contend, and the trial court agreed, that the plaintiffs had no right of action to bring this action, because legal malpractice claims are not assignable. Initially, we note that the issue of the assignability of legal malpractice claims is
 
 res nova
 
 in Louisiana. The plaintiffs argue that legal malpractice claims are assignable under La. C.C. art. 2642 and/or 2044.
 

 First, the plaintiffs contend that rights are generally assignable under Louisiana law, citing La. C.C. art. 2642, which provides:
 

 All rights may be assigned, with the exception of those |fipertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor.
 

 The plaintiffs also assert that the Louisiana Supreme Court has held that actions for the recovery of tort damages are not strictly personal. Since the action herein lies in tort, as it is a claim for loss of money occasioned by legal malpractice, the plaintiffs argue it is, therefore, assignable. In support of this argument, plaintiffs cite
 
 Nathan v. Touro Infirmary,
 
 512 So.2d 352 (La.1987), and
 
 Guidry v. Theriot,
 
 377 So.2d 319 (La.1979). However, both of these cases involved the inheritability — not the assignability' — of medical malpractice actions by a designated beneficiary, after the commencement of an action by the plaintiff tort victim through the filing of a suit or pre-suit complaint. In both cases, the supreme court emphasized the fact that the patients had asserted their rights to recover by filing a claim prior to death, thus creating property rights that were inheritable.
 
 Nathan,
 
 512 So.2d at 355.
 

 We find these cases distinguishable from the instant matter in one crucial aspect— the tort victims had asserted their rights prior to death. As noted by the
 
 Guidry
 
 court, there is a significant difference between inheriting an instituted action and inheriting the right to institute an action.
 
 Guidry,
 
 377 So.2d at 324. In this case, we are not confronted with the situation where Foret either instituted a legal malpractice action against his former attorneys and then died or filed suit against the defendants and later transferred his rights to the plaintiffs. Thus, the facts of this case differ from those in
 
 Nathan
 
 and
 
 Gui-dry
 
 and are not controlling precedent.
 

 The plaintiffs also contend that they could have initiated this action on their own behalf, without the disputed assignment of rights, based on La. C.C. art.2044. Louisiana Civil Code article 2044 provides:
 

 
 *638
 
 If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is 17strictly personal to the obligor.
 

 For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.
 

 The plaintiffs assert that, because Foret discovered the legal malpractice on September 22, 2006, yet did not exercise his rights for over eight months, they could have brought this action directly in their capacity as judgment creditors. However, the plaintiffs have not directed us to any case law demonstrating that the oblique action applies under these facts. Our review of the limited jurisprudence on the subject reveals that the oblique action has been maintained in situations where the debtor has refused or neglected to accept an inheritance,
 
 [8]
 
 where a debtor refuses to sue to set aside a sale based on lesion,
 
 [9]
 
 or where a debtor has refused to recover his property in the hands of third persons.
 
 [10]
 
 We also note that, for purposes of this codal provision, the patrimony of the debtor is the totality of his assets and liabilities susceptible of pecuniary evaluation.
 
 Succession of McLean,
 
 580 So.2d 935 (La.App. 2nd Cir.),
 
 writ denied,
 
 584 So.2d 682 (La.1991). The court in
 
 Succession of McLean
 
 held that strictly personal rights and actions, though patrimonial in nature, cannot be exercised by third persons when closely connected with the personality of the debtor.
 
 Succession of McLean,
 
 580 So.2d at 942.
 

 Herein, we are not convinced that Foret increased his insolvency by failing to file a legal malpractice action against his former counsel. Indeed, had Foret filed suit he may have increased his insolvency through the expenditure of legal fees and costs by pursuing a legal action that had no clear outcome. Accordingly, [swe are not persuaded by plaintiffs’ argument that they could have brought this action themselves pursuant to La. C.C. art.2044.
 

 The defendants contend that legal malpractice claims should not be assignable due to public policy considerations and request us to adopt the policy the majority of other states have adopted. Initially, we are guided by Louisiana jurisprudence that is related to the issue. For example, it is well established in Louisiana that a legal malpractice claim, in the absence of a warranty of result, is a delictual action.
 
 Hendrick v. ABC Insurance Company,
 
 2000-2403, 2000-2349, p. 9 (La.5/15/01), 787 So.2d 283, 289;
 
 Brand v. New England Insurance Company,
 
 576 So.2d 466, 468 (La.1991). It is equally well established in Louisiana that libel and personal injury actions cannot be assigned during the lifetime of the injured party.
 
 See Irion v. Knapp,
 
 132 La. 60, 62, 60 So. 719, 720 (1913);
 
 Gilboy v. American Tobacco Company,
 
 540 So.2d 391, 393 (La. App. 1st Cir.1989).
 

 In recognition of the adversarial nature of litigation and that an attorney’s paramount duty is, and must be, to his
 
 *639
 
 client, Louisiana courts have long held that an attorney does not owe a legal duty to his client’s adversary, when acting on his client’s behalf.
 
 See Scheffler v. Adams and Reese, LLP,
 
 2006-1774, pp. 13-14 (La.2/22/07), 950 So.2d 641, 651-652, and the cases cited therein. As such, a non-client cannot hold his adversary’s attorney personally liable for either malpractice or negligent breach of a professional obligation.
 
 Montalvo v. Sondes,
 
 93-2813, p. 4 (La.5/23/94), 637 So.2d 127, 130.
 

 With these precepts in mind, we now address the issue of whether the assignment of a legal malpractice claim is against public policy in Louisiana. Many courts across the country have been asked to address this issue, and most courts have determined that it is a simpler task — or a better approach — to simply resolve this issue from a public policy perspective. In taking that approach, the ^majority of our sister states have determined that legal malpractice claims are not assignable; only a few states, including Maine and Pennsylvania, have held that such claims are assignable.
 

 Although there is no controlling precedent, we are presented with persuasive authority from both the federal courts and the courts of our sister states. In
 
 Stanley v. Trinchard,
 
 500 F.3d 411, 425 (5th Cir. 2007), in dealing with distinct issues arising under bankruptcy law relating to the rights of the bankruptcy trustee, the fifth circuit acknowledged that “state laws, like Louisiana’s, ... prohibit assignment of legal malpractice claims.” However,
 
 Stanley
 
 did not address the question of assign-ability of legal malpractice claims from a public policy perspective. On the other hand,
 
 Ragas v. MGA Insurance Company,
 
 1996 WL 467288 (E.D.La.1996), did address the issue and held that public policy concerns precluded assignment of legal malpractice claims.
 
 Ragas
 
 was pending in federal district court on grounds of diversity jurisdiction when the plaintiff sought to add Robert Hogan, whose presence in the case would destroy diversity, to the suit. The plaintiff claimed, among other things, that he was the assignee of MGA’s insureds’ legal malpractice claims against their former attorney, Hogan. In denying leave to amend to add Hogan, the court held, without providing an explanation, that the “assignment of a legal malpractice claim is against public policy.”
 

 More recently, in
 
 Kilgore Marine Services, Inc. v. Fireman’s Fund Insurance Co.,
 
 2008 WL 3557711, p. 6 (W.D.La.2008)(citing
 
 Succession of Zatarain,
 
 138 So.2d 163, 165 (La.App. 1st Cir. 1962)), the court acknowledged that “Louisiana law holds that the obligation of an attorney to his client is a personal, rather than heritable, obligation. Thus, a legal malpractice claim is not subject to assignment.”
 
 Id.
 

 Moreover, we find the common theme in cases holding that legal malpractice claims are not assignable is that the relationship between an attorney |inand his client is a fiduciary relationship of the very highest character, and it binds the attorney to most conscientious fidelity.
 
 Goodley v. Wank & Wank, Inc.,
 
 62, Cal.App.3d 389, 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (2 Dist.1976). Thus, not only does the attorney owe the duty to use skill, prudence, and diligence in the performance of the tasks he undertakes for his client, but he also owes undivided loyalty to the interests professionally entrusted to him. Because of the inherent character of the attorney-client relationship, it has been jealously guarded and restricted to only the parties involved.
 
 Goodley,
 
 62 Cal.App.3d at 395-396, 133 Cal.Rptr. 83. Therefore, in
 
 Good-ley,
 
 the California court held:
 

 It is the unique quality of legal services, the personal nature of the attor
 
 *640
 
 ney’s duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.
 

 Public policy encourages those who believe they have claims to solve their problems in a court of law and secure a judicial adjustment of their differences .... However, the ever present threat of assignment and the possibility that ultimately the attorney may be confronted with the necessity of defending himself against the assignee of an irresponsible client who, because of dissatisfaction with legal services rendered and out of resentment and/or for monetary gain, has discounted a purported claim for malpractice by assigning the same, would most surely result in a selective process for carefully choosing clients thereby rendering a disservice to the public and the profession.
 

 hi
 
 Goodley,
 
 62 Cal.App.3d at 397-398, 133 Cal.Rptr. 83 (citation omitted).
 

 In
 
 Zuniga v. Groce, Locke & Hebdon,
 
 878 S.W.2d 313, 317-318 (Tex.App.1994), a Texas court recognized another problem inherent in allowing the assignability of legal malpractice claims, as follows:
 

 [T]he Zuniga-Bauer assignment is a transparent device to replace a judgment-proof, uninsured defendant with a solvent defendant. To allow such assignments would serve two principal goals: enabling the defendant-client to extricate himself from liability, and funding the original plaintiffs judgment. But to allow assignments would exact high costs: the plaintiff would be able to drive a wedge between the defense attorney and his client by creating a conflict of interest; in time, it would become increasingly risky to represent the un-derinsured, judgment-proof defendant; and the malpractice case would cause a reversal of the positions taken by each set of lawyers and clients, which would embarrass and demean the legal profession.
 

 Concerning the client’s desire to be free from liability, we question how far the law should stretch to protect the client who chose to go uninsured. (Footnote omitted).
 

 The California court also raised another valid point — that to allow assignment
 
 *641
 
 would make lawyers reluctant, and perhaps unwilling, to represent defendants with inadequate insurance and assets, because such representation, after all, might make the lawyer the most attractive target in the lawsuit.
 

 In
 
 Coffey v. Jefferson County Board of Education,
 
 756 S.W.2d 155 (Ky.App.1988), the court set aside an assignment of a legal malpractice claim based, at least in part, on the risk of collusion between assignor and assignee. In
 
 Coffey,
 
 the defendant in a negligence case confessed judgment for damages to plaintiff in the amount of $1,000,000 and at the same time sought to assign to plaintiff any legal malpractice claims he may have against his former counsel. In setting aside the assignment, the court found it collusive and against public policy.
 

 We note that at least two courts in our sister states — Maine and Pennsylvania— have taken a contrary view regarding this issue. In
 
 Thurston v.
 
 Continental Casualty Company, 567 A.2d 922, 923 (Me. 1989), a Maine court allowed the assignment of a legal malpractice claim, reasoning as follows:
 

 We hold first that there is no reason to prohibit the assignment of a legal malpractice claim in a situation such as this. We are not here confronted with the establishment of a general market for such claims; this assignee has an intimate connection with the underlying lawsuit. Although some cases from other jurisdictions flatly prohibit the assignment of any legal malpractice claim,
 
 e.g., Goodley v. Wank and Wank, Inc.,
 
 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976);
 
 Christison v. Jones,
 
 83 Ill. App.3d 334, 338-39, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (1980), their reasoning is not persuasive. A legal malpractice claim is not for personal injury, but for economic harm.
 
 Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,
 
 517 Pa. 522, 526, 539 A.2d 357, 359 (1988). The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like 3K from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit. The Superior Court properly denied the lawyer defendants’ motion to dismiss.
 

 In
 
 Hedlund Manufacturing Company, Inc. v. Weiser, Stapler & Spivak,
 
 539 A.2d 357, 359, 517 Pa. 522 (Pa.1988), a Pennsylvania court allowed the assignment of a legal malpractice claim, stating, “We will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice. Where the attorney has caused harm to his or her client, there is no relationship that remains to be protected.”
 

 Having thoroughly reviewed the cases from other jurisdictions, we are persuaded by the reasoning of the federal courts and the majority of our sister states and hold that legal malpractice claims may not be assigned. The mere threat of a malpractice claim being assigned would be detrimental to an attorney’s duty of loyalty and confidentiality to his client, would promote collusion, and would increase a lawyer’s reluctance to represent an underin-sured or insolvent client. Therefore, also as a matter of public policy, we conclude it is not prudent to permit enforcement of a legal malpractice claim that has been transferred by assignment, but never pursued by the original client.
 

 | ^Accordingly, based on positive law, jurisprudence, and public policy, we hereby affirm the December 5, 2007 judgment of
 
 *642
 
 the trial court, sustaining the defendants’ peremptory exceptions raising the objection of no right of action.
 

 III. PRESCRIPTION
 

 A. General Legal Precepts
 

 Prescription statutes are strictly construed against prescription and in favor of maintaining the cause of action.
 
 Babineaux v. State ex rel. Dept. of Transp. and Development,
 
 2004-2649, p. 4 (La.App. 1st Cir.12/22/05), 927 So.2d 1121, 1124. However, prescription statutes are intended to protect defendants against stale claims and the lack of notification of a formal claim within the prescriptive period.
 
 In re Brewer,
 
 2005-0666, p. 4 (La.App. 1st Cir.5/5/06), 934 So.2d 823, 826,
 
 writ denied,
 
 2006-1290 (La.9/15/06), 936 So.2d 1278.
 

 Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. However, when the face of the petition reveals that the plaintiffs claim has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended.
 
 Kirby v. Field,
 
 2004-1898, p. 6 (La.App. 1st Cir.9/23/05), 923 So.2d 131, 135,
 
 writ denied,
 
 2005-2467 (La.3/24/06), 925 So.2d 1230.
 

 In this case, the pleadings reveal that Foret became aware of the alleged legal malpractice on September 22, 2006, and the amended petition was filed on October 3, 2007. As such, the Forets’ claim is prescribed on its face and the plaintiffs must bear the burden of proving that prescription was interrupted or suspended.
 

 B. Relation-Back Doctrine
 

 Plaintiffs assert that the claims raised in the amended petition relate back to the original petition. The question of whether an amendment to a pleading relates back to the original pleading is controlled by La. C.C.P. art. 1153, which states:
 

 114When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
 

 The Code of Civil Procedure itself demands that its articles are to be liberally construed, with due regard for the fact that the rules of procedure implement the substantive law and are not an end in themselves. La. C.C.P. art. 5051. Liberality is particularly appropriate in the amendment process, as long as the moving party is not in bad faith or the opposing party unduly prejudiced.
 
 Giron v. Housing Authority of City of Opelousas,
 
 393 So.2d 1267, 1270 (La.1981).
 

 In
 
 Giroir v. South Louisiana Medical Center, Division of Hospitals,
 
 475 So.2d 1040 (La.1985), the Louisiana Supreme Court established a four-part test for determining whether an amended petition adding a new plaintiff filed after prescription had run relates back to the filing date of the original petition under La. C.C.P. art. 1153. The court held:
 

 [A]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; and (4) the defendant will not be prejudiced in preparing and conducting his defense.
 

 Giroir,
 
 475 So.2d at 1044.
 

 The plaintiffs assert that the amended petition in this case meets all four parts of
 
 *643
 
 the
 
 Giroir
 
 test. Defendants do not concede that the four-part test of
 
 Giroir
 
 is met and argue that because plaintiffs (Taylor and Ledet) were Foret’s adversaries in the prior litigation, they had no reason to logically conclude that Foret would soon be added as a plaintiff in the malpractice action. Accordingly, the defendants’ argument does not focus on a
 
 Giroir
 
 analysis, but instead, the defendants contend, and the trial court agreed, that plaintiffs’ reliance on La. |1SC.C.P. art. 1153 and
 
 Giroir
 
 is misplaced, because the case law interpreting La. C.C.P. art. 1153
 
 assumes
 
 that in the original pleadings, the original plaintiffs had a legally-cognizable claim to assert against the defendants in the first place. Defendants argue that
 
 Giroir
 
 and other Louisiana cases that support relation back involve the changing of party plaintiffs who already had a right to assert the underlying claim against the defendant at the outset.
 
 [11]
 
 Therefore, the defendants assert that because Taylor and Ledet had no legally cognizable cause of action in the first place, the “Foret petition” is essentially a
 
 neio
 
 cause of action.
 
 [12]
 

 In
 
 Giroir,
 
 the Louisiana Supreme Court noted that La. C.C.P. art. 1153 was modeled after Rule 15 of the Federal Rules of Civil Procedure, and as such, federal case law interpreting Rule 15 provides authority in analyzing relation-back issues under Article 1153.
 
 Giroir,
 
 475 So.2d at 1042. Therefore, defendants urge us to rely on
 
 Summit Office Park, Inc. v. United States Steel Corporation,
 
 639 F.2d 1278 (5th Cir. 1981). In
 
 Summit,
 
 an indirect purchaser of material, had filed an antitrust suit against manufacturers of reinforced steel bars. After the filing of the suit, but before the case was tried, the United States Supreme Court announced a decision in which the court stated that indirect purchasers of materials had noutstanding to assert antitrust claims. Summit attempted to amend its original complaint to add a restructured class of direct purchasers only. The Fifth Circuit held that where the original plaintiff did not have a viable cause of action, he could not amend the complaint to add new parties-plaintiffs. The court also held that a newly added plaintiff could not appear in a case in which the original plaintiffs had no right to
 
 *644
 
 assert. The court stated: “A pleading which abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover, has the characteristics of a new lawsuit rather than an amended complaint.”
 
 Summit,
 
 639 F.2d at 1284. The only manner in which the newly added plaintiff could assert a claim against the defendant is by filing a separate and independent claim, subject to the time limitations that attach thereto.
 

 We agree with the trial court that relation back simply cannot be allowed under the circumstances of the instant case. Because we find that Taylor and Ledet could never recover upon the claims of legal malpractice against Foret’s counsel, the only manner in which Foret could assert said claims against his former counsel was by filing a separate suit, which is now time-barred.
 
 [13]
 
 Accordingly, the December 5, 2007 judgment of the trial court, sustaining the defendants’ peremptory exceptions raising the objection of prescription, is hereby affirmed.
 

 IV. CONCLUSION
 

 For all the foregoing reasons, the December 5, 2007 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs/appellants, Eva Taylor, Kevin Ledet, and Jesse Foret.
 

 AFFIRMED.
 

 [1]
 

 . The motion and order for appeal asserts that the appeal is taken on behalf of Eva Taylor, Kevin Ledet, Jesse Foret, Michelle Foret, and Janell Cook; however, it appears that the appellate brief has been filed only on behalf of Eva Taylor, Kevin Ledet, and Jesse Foret.
 

 [2]
 

 . The facts concerning the motorboat accident and the underlying litigation are taken from this court’s opinion rendered in
 
 Taylor v. Foret,
 
 2006-1945, 2006-1946 (La.App. 1st Cir.6/8/07, 958 So.2d 1217)(unpublished),
 
 -writ denied.
 
 2007-1411 (La.10/5/07), 964 So.2d 943.
 

 [3]
 

 .The bankruptcy petition filed on behalf of Foret advises that the purpose of a Chapter 7 case is to obtain a discharge of existing debts. However, there is a notation that some debts are not dischargeable under the law, including debts for death or personal injury caused
 
 *636
 
 while driving while intoxicated from alcohol or drugs.
 

 [4]
 

 . Specifically, Taylor and Ledet asserted that their claim should not be discharged pursuant to 11 U.S.C.A. § 523(a)(9), because the injuries they suffered were caused by Foret’s operation of a motor vehicle while he was intoxicated. Plaintiffs further averred that their claims should not be discharged pursuant to 11 U.S.C.A. § 523(a)(6) because the accident resulted from Foret’s "willful and malicious” injury to them.
 

 [5]
 

 . Before trial, the parties stipulated that Le-det had sustained damages in the amount of $200,000 and that Taylor had sustained $4,000,000 in damages.
 

 [6]
 

 . There are no allegations in the pleadings nor any evidence contained in the record to suggest how Foret became aware of the alleged malpractice on that date.
 

 [7]
 

 . The first amended petition for damages also added Janell Cook as a plaintiff and added a claim for attorney fees she allegedly paid in connection with the bankruptcy proceeding. Defendants asserted an exception of vagueness to the claims of Janell Cook, which was sustained by the trial court, but is not an issue in this appeal.
 

 [8]
 

 .
 
 Gardner
 
 v.
 
 Montagna,
 
 16 La. Ann. 299 (1861).
 

 [9]
 

 .
 
 Belcher & Creswell v. Johnson,
 
 114 La. 640, 38 So. 481 (1905). In this case, the court also gave examples of the types of personal rights that a creditor cannot exercise in the stead of his debtor or compel the debtor to perform,
 
 i.e.,
 
 a creditor cannot compel his debtor to bring a suit for separation of property between him and his wife, as the right is entirely personal; nor for the same reason can he compel him to accept a donation, or call on coheirs to collate.
 
 Belcher & Creswell,
 
 38 So. at 481.
 

 [10]
 

 .Spencer v. Goodman & Bradfield,
 
 33 La. Ann. 898 (1881).
 

 [11]
 

 . At issue in
 
 Giroir
 
 was whether an amended petition, which added decedent's adult children as new plaintiffs in wrongful death and survival actions after prescription had run, related back to the date of the filing of their father’s timely original petition. The supreme court answered that question in the affirmative, specifically noting the close familial and legal relationship between the original plaintiff and the new plaintiffs. Curiously, both plaintiffs and defendants also cite this Court's opinion in
 
 Gilboy v. The American Tobacco Company,
 
 540 So.2d 391 (La.App. 1st Cir. 1989), to support their respective positions on the issue. In
 
 Gilboy,
 
 Mr. Gilboy, allegedly injured by cigarette-induced lung cancer, executed a donation inter vivos giving his claim for damages against cigarette manufacturers and a cigarette vendor to his wife, his children, and Stop Teenage Addiction to Tobacco. The donees brought the lawsuit and the petition was met with the exceptions of no right and no cause of action. This court held that Mr. Gilboy could not legally donate his cause of action for personal injury during his lifetime, and held that the exception of no right of action was properly sustained. However, this court further held that the trial court should have permitted an amendment to the petition to substitute Mr. Gilboy as plaintiff, particularly since no party to the litigation asserted that the cause of action belonged to anybody but Mr. Gilboy.
 

 [12]
 

 . The defendants assert that the first amended petition, which was filed to add the Forets as plaintiffs, only added a cause of action for mental anguish. The Forets dispute this and contend that they were added to pursue the full gamut of legal malpractice claims. The trial judge did not address this contention, because he ultimately concluded that all of the claims were prescribed because the relation-back doctrine did not apply.
 

 [13]
 

 . We do not here address the issue of whether mental anguish damages are recoverable in a legal malpractice action, in light of our ruling that all claims asserted by the plaintiffs in the amended petition are prescribed.