GAIDRY, J.
 

 |sThe general contractor and primary subcontractor for a hospital expansion project appeal a judgment on a peremptory exception of prescription, dismissing their claims for damages against the hospital’s property insurer. For the following reasons, we affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 On March 8, 2004, TCC Contractors, Inc. (TCC) contracted with Hospital Service District No. 3 of the Parish of La-fourche, State of Louisiana, doing business as Thibodaux Regional Medical Center (the Hospital) for the construction of a multi-level medical office building and attached parking garage. TCC subcontracted a substantial portion of its general contract work to its affiliated company, Thompson Construction Company, Inc. (Thompson). Thompson in turn subcontracted certain components of its work to subcontractors. The construction contract originally contemplated a completion date of January 1, 2005, but various circumstances contributed to delays in construction beyond the projected completion date.
 

 The construction contract required the Hospital as owner to “procure and maintain builder’s risk property insurance to cover the completed construction for the [pjroject, the material and other property delivered to the [pjroject site which are to become part of the permanent construction for the [pjroject or are to be consumed on the [pjroject site in the process of constructing the [pjroject.” The contract further required that insurance coverage to “include as loss payees the [cjontractor [TCC], [sjubcontractors at any tier, and suppliers in an amount equal to the actual cash value for all risks of direct physical loss.”
 

 | Continental Casualty Company (Continental) issued a policy of commercial property insurance to the Hospital, providing builder’s risk coverage for its project pending its completion and property damage coverage for the completed structures. The relevant policy period at issue here was from February 1, 2005 to November 1, 2006. The named insureds were the Hospital and its affiliated or subsidiary organizations. Neither TCC nor Thompson was ever added as an additional insured or a loss payee under the policy.
 

 On August 24, 2005, the project architect issued an “Architect’s Certificate of Substantial Completion,” together with a “punch list” of items remaining to be com
 
 *1106
 
 pleted by TCC. TCC’s president executed the certifícate on August 25, 2005.
 

 During the course of construction, the exterior window system of the medical office building was subjected to water intrusion testing to insure that the windows would not leak. On August 29, 2005, southeastern Louisiana was struck by Hurricane Katrina. Hurricane Katrina was followed by Hurricane Rita, which made landfall on September 24, 2005. Representatives of the Hospital advised TCC that as the result of the hurricanes, numerous leaks occurred in the exterior window system, and that it considered TCC’s construction deficient in that regard.
 

 By endorsement dated September 14, 2005, the builder’s risk coverage of Continental’s policy was deleted effective August 24, 2005, on the grounds that the medical office building and parking garage were considered completed as of the latter date.
 

 On July 12, 2006, TCC’s attorneys wrote to Continental, advising that TCC, “as contractually assumed loss payee, and alternatively, on behalf of the owner, [the Hospital],” was submitting a claim under Continental’s Impolicy for the reimbursement of all damages resulting from the hurricanes, including its “substantial remediation costs and delay damages in addition to liquidated damages assessed pursuant to the terms of the [construction contract].” Having received no response, TCC’s attorneys wrote again to Continental on August 2, 2006.
 

 On August 18, 2006, TCC and Thompson (the plaintiffs) jointly filed suit against the Hospital, its chief executive officer, the chairman of its board of directors, the project architects, and various subcontractors, project consultants and subconsul-tants, and insurers, including Continental. The plaintiffs sought recovery for their additional costs incurred in repairing the damages to the building, for the balance of the payments due them under the terms of the construction contract, and for other alleged damages.
 
 [1]
 
 The plaintiffs alleged that the Hospital breached the construction contract by failing to obtain suitable builder’s risk insurance coverage for TCC’s benefit, that TCC was a third-party beneficiary under Continental’s policy, and that Continental was “responsible for any and all damages suffered to the [p]roject as a result of Hurricanes Katrina and Rita, plus all amounts recoverable under law for failure to properly or timely process this claim.”
 

 On August 22, 2006, Continental responded by letter to TCC’s letter of July 12, 2006, expressing its position that TCC was neither an insured nor a loss payee under its policy, and that, even if it was a loss payee, it would | ^not have the right to seek recovery under the policy directly from Continental.
 

 The Hospital and the other named defendants initially responded to the plaintiffs’ petition with various exceptions and motions asserting procedural objections and defenses. On March 7, 2007, Conti
 
 *1107
 
 nental filed a peremptory exception of no right of action, contending that since its policy was a commercial property insurance policy and neither TCC nor Thompson was an insured, the plaintiffs had no right of action against it.
 

 On April 9, 2007, the plaintiffs filed a “First Amended Petition for Damages,” amending certain allegations to clarify civil rights claims under 42 U.S.C. § 1983 made against the Hospital’s chief executive officer and the chairman of its board of directors.
 

 On February 6, 2008, the Hospital executed a written assignment of its rights against the project architect and other parties relating to the design and installation of the window system to TCC, including an assignment of its rights against Continental under the builder’s risk and property coverages of its policy.
 
 [2]
 

 Continental’s peremptory exception of no right of action was finally heard on March 16, 2009, over two years after it was filed. The trial court sustained the exception, and by judgment signed,on March 80, 2009, granted the plaintiffs leave to amend or supplement their petition by April 15, 2009, in default of which their claims against Continental would be dismissed with prejudice.
 

 |7On April 15, 2009, the plaintiffs filed a “First [sic] Supplemental and Amending Petition” (the Amending Petition), adding allegations that the Hospital assigned its rights under the Continental policy to TCC and that “as assignee of [the Hospital]” TCC was asserting “claims for all damages suffered to [sic ] [the Hospital] as a result of Hurricanes Katrina and Rita, including damage to the window system which was under construction, as alleged in ... the original [p]etition for [d]amages.”
 

 On May 15, 2009, Continental filed a peremptory exception of prescription, asserting that the plaintiffs’ claims against it as assignees of the Hospital were prescribed.
 

 Continental’s exception was initially heard by the trial court on July 20, 2009. After receiving evidence and hearing argument, the trial court overruled the exception, and on July 27, 2009, Continental filed a notice of intent to seek supervisory writs and requested the trial court to fix a return date. On August 11, 2009, the trial court signed its judgment overruling the exception; however, on the same date, it issued an order fixing a contradictory hearing for a new trial on the exception on its own motion, on the grounds that the judgment might have been in error.
 
 [3]
 

 The contradictory hearing on the trial court’s motion for a new trial on the exception was held on October 16, 2009. At the conclusion of the hearing, during which no new evidence was presented, the trial court took the matter under advisement.
 

 On November 20, 2009, the trial court signed its judgment granting the new trial and sustaining Continental’s peremptory exception of prescription, dismissing the plaintiffs’ causes of action against Continental | swith prejudice. On the same date,
 
 *1108
 
 it issued detailed written reasons for judgment.
 

 The plaintiffs now appeal.
 

 ASSIGNMENTS OF ERROR
 

 The plaintiffs contend that the trial court erred in the following respects:
 

 I. The [trial] court generally erred in granting a new trial on its own motion for the purpose of reversing its earlier ruling denying [Continental’s] [peremptory [exception of [prescription.
 

 II. The [trial] court erred in concluding that the applicable prescriptive period for claims against [Continental] was not interrupted by the original timely filed suit by [the plaintiffs],
 

 III. The [trial] court erred in concluding that the amended claims of [the plaintiffs] against [Continental] did not relate back to the original timely filed [p]etition.
 

 STANDARD OF REVIEW
 

 If evidence is introduced at the hearing on the peremptory exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard of review.
 
 Carter v. Haygood,
 
 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. However, the questions presented here for our determination are purely
 
 legal
 
 ones, rather than factual ones, as the pertinent facts are undisputed. In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the
 
 de novo
 
 standard of review, under which the trial court’s legal conclusions are not entitled to deference.
 
 Kevin Associates, L.L.C. v. Crawford,
 
 03-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43.
 

 1 .DISCUSSION
 

 The Applicable Prescriptive Period
 

 Liberative prescription is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. A civil action is a demand for the enforcement of a legal right, commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction. La. C.C.P. art. 421. Prescription is also interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La. C.C. art. 3464. Acknowledgment of the other person’s “right” in that sense, however, is to be distinguished from mere acknowledgment of another’s claim to possess such a right or the mere existence of a disputed claim, and even more so from such mere acknowledgment combined with a denial or rejection of the claim’s validity. To effect an interruption of prescription, the acknowledgment of the right must rise to an admission of liability or at least unconditional recognition of the undisputed validity of a part of the claim.
 
 See Demma v. Auto. Club Inter-Insurance Exch.,
 
 08-2810 (La.6/26/09), pp. 9-10, 15 So.3d 95, 102.
 

 At the time of the losses at issue here, former La. R.S. 22:691 (redesignated as La. R.S. 22:1311 by Acts 2008, No. 415, § 1, effective January 1, 2009), provided a one-year prescriptive period for claims under property insurance policies. However, following Hurricanes Katrina and Rita, the legislature enacted legislation ratifying gubernatorial executive orders that suspended the running of liberative prescription, peremption, and other legal deadlines for certain fixed periods of time.
 
 [4]
 
 Additional
 
 *1109
 
 ly, and most significantly for our purposes, the legislature enacted former La. R.S. 11022:658.3, effective June 29, 2006 (reenacted and redesignated as current La. R.S. 22:1894 by Acts 2008, No. 415, § 1, effective January 1, 2009), providing in pertinent part:
 

 A. ... [A]ny person or entity having a claim for damages pursuant to a ... commercial property insurance policy, and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
 

 B. ... [A]ny person or entity having a claim for damages pursuant to a ... commercial property insurance policy, and resulting from Hurricane Rita shall have through October 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
 

 The Hospital never instituted legal action against Continental; thus, no action by the Hospital ever served to interrupt prescription against Continental pursuant to La. C.C. art. 3462. Similarly, there is no evidence that the Hospital ever made a claim against Continental for any covered losses under the policy, that the Hospital ever put Continental on notice of such a claim, or that Continental ever acknowledged the Hospital’s rights regarding such a claim. Thus, no interruption of prescription by acknowledgment to the Hospital by Continental occurred. If any interruption of prescription in favor of the plaintiffs occurred, it must be based upon their independent institution of legal action against Continental prior to October 1, 2007 at the latest.
 
 [5]
 

 The Nature of the Plaintiffs’ Right of Action Against Continental
 

 Although it is the trial court’s judgment sustaining Continental’s peremptory exception of prescription that is the subject of this appeal, the legal basis of its prior judgment sustaining Continental’s peremptory |„ exception of no right of action has bearing upon our determination of the issues raised and warrants the following observations.
 

 Generally, a civil action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. An action brought by a person lacking such an interest is subject to a peremptory exception raising the objection of no right of action. La. C.C.P. art. 681, Official Revision Comments— 1960, (b).
 
 See also
 
 La. C.C.P. art. 927(a)(6). The function of an exception of no right of action is a determination of whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition.
 
 Badeaux v. Southwest Computer Bureau, Inc.,
 
 05-0612, p. 6 (La.3/17/06), 929 So.2d 1211, 1216-17. In other words, the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit.
 
 Id.,
 
 05-0612 at p. 6, 929 So.2d at 1216.
 

 In their original petition, the plaintiffs attempted to assert a cause of action against Continental based upon TCC’s alleged status as a loss payee or third party beneficiary under the policy of commercial property insurance issued to the Hospital. Continental initially responded with a peremptory exception of no right of action, challenging the plaintiffs’ standing to seek recovery under the policy.
 

 
 *1110
 
 The policy at issue is a policy of commercial property insurance, not a policy of liability insurance, because it covers damage to the insured’s property for the insured’s benefit, not the liability of the insured for damages to others.
 
 See Donald M. Clement, Contractor, Inc. v. Se. Indus. Contracting, Inc.,
 
 425 So.2d 1005, 1006-07 (La.App. 5th Cir.1983). Property insurance, as first-party coverage, generally does not respond to third-party claims. 4 Philip L. Bruner & Patrick J. O’Connor, Jr.,
 
 Bruner
 
 |
 
 12and O’Connor on Construction Law
 
 § 11:218 (2010).
 
 [6]
 
 A builder’s risk policy, or builder’s risk coverage in a multi-risk policy, is a species of property insurance.
 
 See
 
 9A Lee R. Russ & Thomas F. Segalla,
 
 Couch on Insurance
 
 § 132:20 (3rd ed.2010). The purpose of builder’s risk coverage is to provide protection for the building under construction, while it is in the process of being built.
 
 Id.
 
 at n. 6, citing
 
 Ajax Bldg. Corp. v. Hartford Fire Ins. Co.,
 
 358 F.3d 795, (11th Cir.2004).
 
 See also Rivnor Properties v. Herbert O’Donnell, Inc.,
 
 92-1103, p. 29 (La.App. 5th Cir.1/12/94), 633 So.2d 735, 753,
 
 writs denied,
 
 94-1293, 94-1305 (La.9/2/94), 643 So.2d 147.
 

 In their original petition, the plaintiffs alleged that TCC was “a [t]hird [p]arty [b]eneficiary of [the] builder’s risk policy in effect during the construction of the policy” by virtue of its status as “a loss payee under the terms of the policy.” It is undisputed, however, that the plaintiffs were not in fact named or otherwise designated as loss payees in the policy or any endorsement to the policy, as required by the construction contract. The Hospital’s contractual failure to request that the plaintiffs be designated as loss payees cannot be imputed to Continental, and cannot serve to vest the plaintiffs with a cause or right of action against Continental under the policy.
 
 [7]
 

 | i3The trial court sustained Continental’s peremptory exception of no right of action, finding that the plaintiffs had no right of action against Continental under the facts alleged in their original petition and shown
 
 *1111
 
 at the hearing on the exception. The trial court’s judgment granted the plaintiffs leave to amend their petition to allege facts supporting a right of action on their behalf against Continental. The plaintiffs did not seek supervisory appellate review of the judgment sustaining that exception, nor have they sought review of that ruling in the context of the present appeal.
 
 [8]
 

 Assignment of the Hospital’s Rights
 

 By written agreement dated February 6, 2008, the Hospital assigned to TCC its rights against various parties, including Continental, relating to the window system of the medical office building. The assignment of its rights against Continental provided:
 

 [The Hospital] ... assigns [to TCC] any and all rights against [Continental], as the Hospital’s “builder’s risk” or property damage carrier, as said claim may relate to the window system in the [project and any damages thereto, to the extent same was placed at issue in the [l]awsuit. This assignment is without warranty or recourse and in agreeing to this assignment [the Hospital] makes no representations regarding the existence, validity, legitimacy, or value of any such claim.
 

 [ ^Generally, rights arising from a contract are assignable unless the law, the terms of the contract, or the nature of the contract preclude such assignment. La. C.C. art. 1984. Louisiana Civil Code article 2642 further provides:
 

 All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor.
 

 Significantly, Louisiana Civil Code article 2653 provides the following:
 

 A right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an as-signee who has no knowledge of its existence.
 

 As a general rule, a policy of first-party property insurance is deemed to be personal and non-transferable, and this principle is embodied in the statutory standard fire insurance policy, which includes a provision that the policy is not assignable without the insurer’s consent. McKenzie & Johnson,
 
 supra,
 
 at § 317.
 
 See also
 
 La. R.S. 22:1311(F). Continental’s policy expressly provided that “[t]his policy may be assigned or transferred only with the prior written consent of [Continental].” The evidence and the pleadings demonstrate that TCC was in possession of a complete copy of Continental’s policy long before the effective date of the assignment, as its attorneys attached a copy of the policy to their demand letter of July 12, 2006 to Continental, and therefore should be charged with knowledge of the policy’s anti-assignment clause. There is no evidence that Continental ever consented to the assignment by the Hospital of its rights under the policy to TCC.
 

 Despite the foregoing, the issue of the legal validity of the assignment at is
 
 *1112
 
 sue was never raised by Continental and never determined by the trial court. Although we are authorized to notice the peremptory exception of no | ,5cause of action on our own, pursuant to La. C.C.P. arts. 927(B) and 2163, we decline to do so for the
 
 foregoing
 
 reason and other important reasons.
 
 [9]
 
 Accordingly, for our present purposes we will assume that the Hospital’s assignment of February 6, 2008 was legally valid despite the policy’s anti-assignment clause, and that only the procedural effect of the Amending Petition, for purposes of prescription, is ultimately before us.
 

 The assignment of a right is effective against the debtor only from the time the debtor has actual knowledge, or has been given notice of the assignment. La. C.C. art. 2643. When the plaintiffs initially filed suit against Continental, Continental had no notice or reason to believe that a valid cause of action under its policy, by a person having the legal right to assert one, had been filed against it. Further, the plaintiffs’ original petition asserted claims only for their own losses and damages, some of which were attributable to delays unrelated to the hurricanes.
 
 [10]
 
 The plaintiffs did allege in their original petition that TCC “individually and on behalf of [the Hospital] placed [Continental] on notice of damages sustained to the project as a result of Hurricanes Katrina and Rita and specifically owner alleged water intrusion.” But it was not until the filing of the Amending Petition on 11 April 15, 2009, that TCC, “as assignee of [the Hospital],” actually asserted new “claims for damages suffered to
 
 [sic
 
 ] [the Hospital] as a result of Hurricanes Katrina and Rita, including damage to the window system which was under eonstruction[.]”
 

 An assignee acquires no greater rights than his assignor.
 
 DaimlerChrysler Services of N. Am., L.L.C. v. Sec’y, Dep’t of Revenue,
 
 07-0010, p. 8 (La.App. 1st Cir.9/14/07), 970 So.2d 616, 621,
 
 writ denied,
 
 07-2374 (La.2/1/08), 976 So.2d 725. An assignee is also governed by the same prescriptive rules applicable to his assign- or.
 
 Westenberger v. State ex rel. Dep’t of Educ.,
 
 333 So.2d 264, 270 (La.App. 1st Cir.1976). Until the Hospital’s assignment was effective, the plaintiffs had no right or cause of action against Continental, and upon acquiring the assignment TCC succeeded only to those existing rights and causes of action that the Hospital had as of that time. Any individual cause of action that the Hospital had against Continental under either the builder’s risk or property coverages was by then prescribed under
 
 *1113
 
 former La. R.S. 22:658.3. The after-acquired assignment of February 6, 2008 could not operate retroactively to cure the plaintiffs’ deficient original petition and to bootstrap a timely right of action against Continental in their favor, unless the Amending Petition procedurally related back to the time of filing of the original petition.
 

 Relation Back of the Amending Petition
 

 The plaintiffs characterize their Amending Petition as an amended petition; Continental characterizes it as a supplemental petition. As the trial court held, the distinction is important, primarily with regard to the issue of prescription.
 
 See
 
 1 Frank L. Maraist,
 
 Louisiana Civil Law Treatise: Civil Procedure
 
 § 6.10 (2nd ed.2008). Thus, its proper characterization is ultimately determinative of the central issue of this appeal.
 

 |17An amended petition either restates the allegations of a claim that were imperfectly stated in the original petition, or adds a new claim that existed, but was not pleaded, at the time when the original petition was filed.
 
 See
 
 Maraist,
 
 supra.
 
 Louisiana Code of Civil Procedure article 1153 sets forth the conditions under which the allegations of an amended petition are given retroactive effect to the date of filing of the original petition:
 

 When the action ... asserted in the amended petition ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
 

 In contrast to an amended petition, a supplemental petition is filed for the purpose of “setting forth items of damage [or] causes of action ... which have become exigible since the date of filing the original petition ..., and which are related to or connected with the causes of action ... asserted therein.” La. C.C.P. art. 1155. A supplemental petition may therefore be used to add a new cause of action related factually to a previously existing cause of action, even though the new claim does not, properly speaking, arise out of the original cause of action. The new or supplemental cause of action, however, does not relate back in time to the date of the original petition; prescription of the new cause of action would generally be held to be interrupted as of the date of filing of the supplemental petition.
 

 The supreme court in
 
 King v. Ill. Nat’l Ins. Co.,
 
 08-1491 (La.4/3/09), 9 So.3d 780, held that an inchoate right to file suit is strictly personal and not subject to involuntary seizure by a writ of
 
 fieri facias.
 
 In doing so, the supreme court discussed, but did not specifically decide, whether an unexercised or inchoate right to institute a lawsuit may be conventionally assigned.
 
 Id.,
 
 08-1491 at p. 9, 9 So.3d at 786. However, it did make the following observations that are relevant for our purposes:
 

 | |SA decision to file a lawsuit is premised on an individual’s subjective judgment. Fundamentally, such a conscious determination is dictated by one’s mind and will,
 
 exhibited exclusively through the exercise of his or her own volition
 
 by actively filing or
 
 refraining from filing suit.
 
 As such, it is a
 
 strictly personal right
 
 not subject to involuntary relinquishment
 

 Id.,
 
 08-1491 at p. 12, 9 So.3d at 788. (Emphasis added.)
 

 Here, the Hospital never exercised its “strictly personal” right to file suit against Continental. Thus, its rights under the policy were not litigious rights asserted in a pending and timely legal action against Continental, but unexercised or inchoate rights. Because the Hospital never as
 
 *1114
 
 signed to TCC its “strictly personal right” to exercise its discretion to file suit against Continental prior to the date of the plaintiffs’ original petition, the filing of the plaintiffs’ original petition did not interrupt prescription on the Hospital’s cause of action against Continental under the policy.
 
 [11]
 
 Even assuming as we do that the Hospital eventually assigned its inchoate rights under the policy to the plaintiffs, including the “strictly personal” accessory right to file suit against Continental, there was no evidence introduced at the hearing on the exception that it did so prior to the date of the written assignment of February 6, 2008.
 

 In arguing that the allegations and claims of their Amending Petition relate back to the time of filing of their original petition, the plaintiffs rely upon our decision in
 
 Kinchen v. Metro. Prop. & Cas, Ins. Co.,
 
 04-1894 (La.App. 1st Cir.9/23/05), 923 So.2d 678,
 
 writ denied,
 
 05-2368 (La.3/31/06), 925 So.2d 1256, and argue that it controls the proper disposition of this matter. That case arose from the accidental shooting death of the plaintiffs son by another young man in a house owned by the mother of a third young man. The plaintiff originally filed suit against the shooter, the owner of the premises, and the owner’s liability insurer. The plaintiff settled with the shooter, but the owner and her insurer moved for summary judgment on the issue of liability. While the motion was pending, the plaintiff filed an amended petition adding the owner’s son as a defendant and alleging his solidary liability with the defendant insurer, in its capacity as his insurer. We held that the different capacity in which the insurer was originally named did not affect the interruption of prescription as to the claim against it in the capacity of the son’s insurer, and that the interruption of prescription against the insurer also interrupted prescription as to its insured as solidary obligor.
 
 Id.,
 
 04-1894 at pp. 6-7, 923 So.2d at 681.
 

 We find the circumstances of the
 
 Kin-chen
 
 case clearly distinguishable from those of the present case, and its actual legal rationale inapplicable to this case. In the first place, the plaintiffs cause of action in
 
 Kinchen
 
 was delictual in nature and the defendant insurer’s policy was a liability policy, subject to the Louisiana Direct Action Statute, La. R.S. 22:1269 (formerly La. R.S. 22:655), thereby according legal rights to the third-party claimant to proceed directly against the insurer. Secondly, the plaintiff asserted factual allegations supporting a finding of solidary liability, based upon the factual relationship between the insureds and the shooter as alleged joint tortfeasors. The shooter, the owner, and the insurer, in its capacity as the owner’s insurer, had not yet been dismissed when the amended petition joining the owner’s son as defendant and alleged joint tortfeasor was filed. Most importantly, the plaintiff had a viable, existing cause of action in tort against |2gthe owner’s son when the original petition naming
 
 *1115
 
 the insurer as defendant was filed. Finally, because we found that suit was timely filed against the owner’s son and the defendant insurer in its capacity as his insurer by reason of their solidary liability, we expressly pretermitted discussion of whether the allegations of the amending petition related back to the original petition under La. C.C.P. art. 1153.
 
 Kinchen,
 
 04-1894 at p. 7, 923 So.2d at 681.
 

 As emphasized by Continental, its policy provided only first-party property coverage for the Hospital and any other insureds; it was
 
 not
 
 a liability or indemnity policy under which the plaintiffs were authorized to bring a direct action against Continental pursuant to the Louisiana Direct Action Statute, La. R.S. 22:1269. Continental correctly observes that its policy did not insure the construction project, for the benefit of all parties involved; it insured only the Hospital, its insured, against losses and damage to its property and related interests covered under the policy.
 
 [12]
 
 Because the allegations of the plaintiffs’ original petition did not effectively assert any right of action on their part under the policy nor any other legal obligation on the part of Continental toward the plaintiffs for any cause of action alleged, Continental could not have been solidarily liable with any other defendant to the plaintiffs, such that the filing of suit against such a defendant would serve to interrupt prescription under La. C.C. art. 1799.
 
 [13]
 

 _[2¡The more recent case of
 
 Taylor v. Babin,
 
 08-2063 (La.App. 1st Cir.5/8/09), 13 So.3d 633,
 
 writ denied,
 
 09-1285 (La.9/25/09), 18 So.3d 76, while involving different facts, nevertheless provides guidance on the dispositive issues, including the issue of relation back of an amended or supplemental petition. The original plaintiffs, Taylor and Ledet, were injured in 2003 in a boating accident caused by the negligence of Foret, who was intoxicated and uninsured. The plaintiffs sued Foret, and obtained judgments against him in 2006. Foret later contended that his attorneys committed legal malpractice in 2004 by failing to secure his discharge in bankruptcy from the tort claim, and assigned his malpractice claim to the plaintiffs in an attempt to satisfy the judgments against him. The plaintiffs then sued For-et’s former attorneys based upon the assignment, alleging that Foret discovered the malpractice in 2006. The defendant attorneys excepted on the grounds that the plaintiffs had no right of action, because legal malpractice claims were not assignable under Louisiana law. The plaintiffs then amended their petition to add Foret and his wife as plaintiffs and to bring a claim on their behalf for mental anguish. The defendant attorneys excepted to the amended petition on the basis of prescription and other grounds. The trial court sustained the exceptions, holding that the original plaintiffs had no right of action against the defendant attorneys, and that the Forets’ claims were prescribed.
 

 
 *1116
 
 On appeal, as a matter of first impression, we held that legal malpractice claims are not assignable “based on positive law, jurisprudence, and public policy.”
 
 Taylor,
 
 08-2063 at pp. 12-13, 13 So.3d at 641. Because the original plaintiffs therefore had no legally cognizable right of action against the defendant attorneys for malpractice, the defendant attorneys argued that the amended petition was “essentially a
 
 new
 
 cause of action.” Id., 08-2063 at p. 15, 13 So.3d at 643. We agreed, and further held that the amended petition adding the Forets as plaintiffs did not relate back to the date of filing of the original petition under La. C.C.P. art. 1153.
 
 Id.,
 
 08-2063 at pp. 14-16, 13 So.3d at 643-44. Because the original petition did not interrupt prescription on the later-added malpractice claims of the Forets, those claims asserted in the amended petition (properly speaking, the
 
 supplemental
 
 petition) were prescribed.
 
 Id.,
 
 08-2063 at p. 16, 13 So.3d at 644.
 

 The plaintiffs argue on appeal that “[t]he mere fact that
 
 a different cause of action
 
 was asserted in the Amending Petition is insufficient to properly establish the exception of prescription.” (Emphasis added.) This proposition, standing alone, is generally correct. However, our law, as interpreted in the jurisprudence, holds that in order for the doctrine of relation back to apply and to circumvent the effect of prescription, a new cause of action asserted in an amended petition (1) must have been in existence at the time the original petition was filed; (2) must have been vested in the plaintiffs at that time; and (3) must arise out of “the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.”
 
 See La.
 
 C.C.P. art. 1153.
 

 The plaintiffs’ Amending Petition for the first time made claims for the
 
 Hospital’s
 
 property losses or damages actually covered by the policy, a cause of action for items of damages never claimed before by the plaintiffs or, for that matter, by the Hospital. The Hospital’s claims assigned to TCC derive from the insurance contract, the transaction upon which the Hospital’s contractual cause of action against Continental was based, and not the separate construction contract between the Hospital and TCC, the transaction upon which the plaintiffs’ original petition was primarily based. L/The Amending Petition therefore “has the characteristics of a new lawsuit rather than an amended [petition].”
 
 See Taylor,
 
 08-2063 at p. 16, 13 So.3d at 644, citing
 
 Summit Office Park, Inc. v. U.S. Steel Corp.,
 
 639 F.2d 1278, 1284 (5th Cir.1981). It is thus “tantamount to assertion of a new cause of action which would have otherwise prescribed.”
 
 See Ray v. Alexandria Mall,
 
 434 So.2d 1083, 1087 (La.1983). This circumstance militates against relation back of the Amending Petition under the criteria enunciated in
 
 Ray
 
 and the analogous case of
 
 Giroir v. S. La. Med. Ctr.,
 
 475 So.2d 1040 (La.1985).
 

 Because a civil action by definition can be brought only by a person having a right of action, it stands to reason that an action instituted by a person determined to have no right of action cannot serve as an “action” sufficient to interrupt prescription.
 
 See
 
 La. C.C.P. art. 681 and La. C.C. art. 3462. Here, the plaintiffs had no valid right of action against Continental at the time they filed their original petition. The relation back theory embodied in La. C.C.P. art. 1153 assumes that there is a legally viable claim to which the pleading can relate back.
 
 Naghi v. Brener,
 
 08-2527, p. 10 (La.6/26/09), 17 So.3d 919, 925. Prior to the effective date of the assignment, the Hospital was the only person who had the right to make the decision to file suit against Continental, but instead exercised its exclusive volition to refrain from doing so. Because of the “strictly personal” character of the right to file suit,
 
 *1117
 
 the plaintiffs’ right to do so can be given legal effect only from the effective date of the assignment, and the assignment could not retroactively cure the initial absence of a right of action by the plaintiffs.
 

 The separate contractual relationship between the Hospital as assignor and TCC as assignee, as distinguished from their original contractual relationship, did not exist prior to the date of the assignment, and 124thus TCC as assignee had no right to judicially enforce the rights it acquired by assignment until that time.
 
 See
 
 La. C.C.P. art. 698. TCC’s newly-acquired right of action asserted in the Amending Petition likewise did not arise and become exigible until the date of the assignment by the Hospital to TCC, but the Hospital’s cause of action and rights under Continental’s policy had by then prescribed. Because the Amending Petition was therefore, properly speaking, a
 
 supplemental
 
 petition that did not relate back to the date of the original petition, any purely derivative cause of action acquired by TCC by assignment from the Hospital was first asserted well over a year from the extended prescriptive date, and is therefore prescribed under former La. R.S. 22:658.3. The Amending Petition, regardless of how it was styled or captioned, cannot relate back under La. C.C.P. art. 1153, as that article applies only to amended petitions, not supplemental petitions.
 
 See Smith v. Cutter Biological,
 
 99-2068, pp. 33-7 (La.App. 4th Cir.9/6/00), 770 So.2d 392, 410-13.
 

 For all of the foregoing reasons, and for the sound reasons expressed by the trial court, we conclude on our
 
 de novo
 
 review of this matter that the derivative causes of action asserted by the plaintiffs against Continental under its policy issued to the Hospital were prescribed, and that the trial court’s judgment sustaining Continental’s peremptory exception of prescription was correct as a matter of law. Dismissal of Thompson’s causes of action against Continental is also warranted based upon its failure to assert a right of action on its behalf against Continental in the Amending Petition.
 
 See
 
 n.7,
 
 supra.
 
 The trial court’s judgment dismissing the causes of action of the plaintiff-appellants, TCC Contractors, Inc. and Thompson Construction Company, Inc. against the defendant-ap-pellee, Continental [ ^Casualty Company, is accordingly affirmed. All costs of this appeal are assessed to the plaintiff-appellants.
 

 AFFIRMED.
 

 CARTER, C.J., concurs in the result only.
 

 [1]
 

 . The damages claimed by the plaintiffs from the various defendants included "additional material and equipment costs, additional on-site labor and supervision, and additional [on-site] and home office overhead”; "amounts withheld from [the plaintiffs] by [the Hospital]”; "liquidated damages assessed for exceeding the contract time”; "delay, interference and acceleration damages”; "extended field overhead, excess equipment standby costs, accelerated labor productivity loss, equipment productivity loss, labor inefficiencies, escalation costs, lost profits, damage to reputation, loss of use of funds, loss of business opportunity and loss of bonding capacity”; "punitive damages pursuant to 42 U.S.C. § 1983”; and "all attorneys[’] and paralegal fees, expert fees, litigation costs, and interest[.]”
 

 [2]
 

 . The assignment was in favor of TCC alone, with no mention of Thompson. There is no evidence in the record showing any subsequent assignment of rights by TCC in favor of Thompson. Given the present posture of the parties and the pleadings, it would therefore appear that Thompson has no right of action against Continental even under the allegations of the Amending Petition.
 
 See
 
 n.7,
 
 infra.
 

 [3]
 

 . The trial court's action is expressly authorized by La. C.C.P. art. 1971. On the same date that it issued its order, and for the same reason, the trial court also denied Continental’s request to fix a return date for the filing of its writ application.
 

 [4]
 

 .
 
 See, e.g.,
 
 La. R.S. 9:5821,
 
 et seq.,
 
 enacted by Acts 2005, 1st Ex.Sess., No. 6, § 1, effective November 23, 2005.
 

 [5]
 

 . Although the plaintiffs emphasize that Continental was put on notice of their claims by demand letter even before their original petition was filed, they do not argue that Continental made an acknowledgment of their claims sufficient to interrupt prescription.
 

 [6]
 

 . Property insurance is considered "first-party” insurance, in the sense that it covers a loss sustained by the insured, the first party to the insurance contract, as opposed to liability or "third-party” insurance, which covers the insured’s liability to a third party (a non-party to the insurance contract) for that party’s loss.
 
 See Black’s Law Dictionary
 
 817, 1518 (8th ed.2004).
 

 [7]
 

 . Even if they had been named as loss payees, such status would not have bestowed any contractual rights in the plaintiffs’ favor against Continental, for the following reasons. The "Loss Payable Clause” of Continental's policy is contained in the policy's general conditions. It provides that ”[l]oss, if any, shall be adjusted with and
 
 payable to the Named Insured or their order,
 
 whose receipt shall constitute a release in full of all liability under the policy with respect to such loss.” (Emphasis added.) This is a "simple or "open” loss payable clause, as opposed to "standard” or "union” loss payable clause, which operates as a separate and distinct contract between the insurer and the loss payee.
 
 See Rushing v. Dahyland Ins. Co.,
 
 456 So.2d 599, 601-02 (La.1984). A "simple” or "open” loss payable clause is no more than a provisional appointment by the insured of a third person to whom the policy loss proceeds shall be paid, to the extent of that person’s interest. Its purpose is to protect the third person's interest, such as the mortgage balance of a mortgagee. When an insured loss occurs, the insurer is liable for the value of the loss to the extent of the policy limits and must direct payment to the loss payee up to the value of the loss payee's interest. The interest that is actually insured, however, is the insured's interest in the insured property; the loss payee does not have a separate and independent contractual right under the policy and is not considered an insured.
 
 Id. See also
 
 15 William Shelby McKenzie & H. Alston Johnson HI,
 
 Louisiana Civil Law Treatise: Insurance Law and Practice
 
 § 332 (3rd ed.2006). Accordingly, a loss payee under a "simple” or "open” loss payable clause has no right of action against the insurer.
 

 [8]
 

 . Arguably, under these circumstances, the trial court's determination that the plaintiffs had no right of action against Continental under its policy for the cause of action asserted in their original petition should be considered the law of the case, as its judgment sustained rather than overruled Continental’s exception.
 
 See Babineaux v. Pernie-Bailey Drilling Co.,
 
 261 La. 1080, 1092-94, 262 So.2d 328, 332-333 (La.1972). Additionally, as we have previously noted, the plaintiffs’ Amending Petition did not add any allegations relevant to Thompson's status, as opposed to TCC’s status of assignee of the Hospital’s rights.
 
 See
 
 n.2,
 
 supra.
 
 Such being the case, dismissal of Thompson’s claims against Continental, with prejudice, on the objection of no right of action would be justified.
 

 [9]
 

 . The prevailing rule nationwide is that an insurance policy provision that prohibits the policy's assignment or the assignment of any rights under the policy after loss, except with the insurer’s consent, is against public policy.
 
 See
 
 2 Lee R. Russ & Thomas F. Segalla,
 
 Couch on Insurance
 
 § 34:2 (3rd ed.2010). Louisiana jurisprudence is divided on this question, with at least one older case subscribing to the foregoing rule.
 
 See Geddes & Moss Undertaking & Embalming Co. v. Metro. Life Ins. Co.,
 
 167 So. 209, 210 (La.App. Orl.Cir.1936). However, a more recent case, involving the assignment of claims under a property insurance policy following Hurricane Katrina, enforced an antiassignment clause in accord with the plain language of La. C.C. arts. 1984 and 2653.
 
 See R.L. Luden Tile Co. v. Am. Sec. Ins. Co.,
 
 08-1190, pp. 6-7 (La.App. 4th Cir.3/11/09), 8 So.3d 753, 756-57. The U.S. Fifth Circuit Court of Appeals has now certified the question to our supreme court.
 
 In re Katrina Canal Breaches Litigation, 613
 
 F.3d 504, 512 (5th Cir.2010). Certification was granted on October 29, 2010.
 
 In re Katrina Canal Breaches Litigation,
 
 2010-CQ-1823 (La. 10/29/10).
 

 [10]
 

 . Parenthetically, it would also appear that practically all of the elements of contractual damages claimed in the original petition were clearly excluded under the builder’s risk and property coverages of the policy and could not have been made by even the Hospital itself as insured.
 

 [11]
 

 . Likewise, there was no evidence that TCC had any express or implied authority or mandate to act for the Hospital in presenting a claim against Continental under its policy by means of the letter of July 12, 2006. Thus, the mere notice of TCC's claim by letter, even if purportedly made on behalf of the Hospital as insured, would not have served as notice for purposes of preserving TCC’s later-acquired rights from the running of prescription. Only notice in the form of "formal legal demands” is sufficient to interrupt prescription under La. C.C. art. 3462.
 
 See Smith v. Cutter Biological,
 
 99-2068, pp. 34-5 (La.App. 4th Cir.9/6/00), 770 So.2d 392, 411. As the court in the cited case observed, "[i]f mere knowledge of an occurrence that could result in a timely action were sufficient to interrupt prescription, most causes of action would be imprescriptible.”
 
 Id.
 
 at p. 35, 770 So.2d at 411.
 

 [12]
 

 . "[U]pon strict analysis, ... it is not the property which is insured, but the rights of the insured party; the intention is to avert any loss or damage that the insured might sustain because of a covered risk to the property." 1 Lee R. Russ & Thomas F. Segalla,
 
 Couch on Insurance §
 
 1:11 (3rd ed.2010).
 

 [13]
 

 . Because Continental’s alleged liability to the plaintiffs is not based in tort, La. C.C. art. 2324(C), under which suit against a joint tort-feasor interrupts prescription against other joint tortfeasors, has no application. It is also questionable whether any potential liability of Continental to the plaintiffs under its policy would have been solidary with that of any other defendant for the particular damages claimed, given the differing nature of the plaintiffs’ separate causes of action against the various defendants. Because of our disposition of this matter, we need not reach that issue.