| | | |
|---|---|---|
| **2700 BOHN MOTOR, LLC, NAVIGATOR INSURANCE COMPANY, AND CERTAIN UNDERWRITERS IN LONDON SUBSCRIBING TO POLICY NO. B128415396W17** | * | NO. 2021-CA-0671 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| **VERSUS** | | STATE OF LOUISIANA |
| | \* \* \* \* \* \* \* | |
| **F.H. MYERS CONSTRUCTION CORP., ORLEANS SHEET METAL WORKS AND ROOFING, INC., B & J ENTERPRISE OF METAIRIE, INC., ABC INSURANCE COMPANY, XYZ INSURANCE COMPANY, AND 123 INSURANCE COMPANY** | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-12297, DIVISION "B-5"
Honorable Rachael Johnson,
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Pro
Tempore Judge Madeline Jasmine)

Philip S. Brooks, Jr.
Ronald J. Kitto
Edward L. Fenasci
BROOKS GELPI HAASE, LLC
909 Poydras Street, Suite 2325
New Orleans, LA 70112

　　　　COUNSEL FOR PLAINTIFF/APPELLANT

Barbara Malik
MARICLE & ASSOCIATES
3838 North Causeway Boulevard
Three Lakeway Center, Suite 3160
Metairie, LA 70002

Nicole S. Loeb
J. Scott Loeb
Cynthia M. Bologna
LOEB LAW FIRM, II
1180 W Causeway Approach
Mandeville, LA 70471

Scott H. Mason
Meredith R. Durham
PLAUCHE' MASELLI PARKERSON L.L.P.
701 Poydras Street
One Shell Square, Suite 3800
New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**APRIL 20, 2022**

In this construction contract case, the Plaintiffs, the building owner and its insurers, appeal the trial court's granting of a joint motion for summary judgment in favor of the Defendants, the general and sub-contractors. In granting summary judgment, the trial court found that the existence of a waiver of subrogation clause in the contract precluded Plaintiffs' claims. Therefore, it dismissed the case with prejudice. For the following reasons, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a fire that occurred during the restoration of the old Bohn Motor Company automobile dealership, located at 2700 South Broad Street (Building), in New Orleans. On October 24, 2017, the owner of the Building, 2700 Bohn Motor, LLC, (Bohn Motor) retained F.H. Meyers Construction Corp. (F.H. Meyers) to be the general contractor on the project.[1] In turn, F.H. Meyers contracted with Orleans Sheet Metal Works and Roofing, Inc. (OSM) to serve as a subcontractor. Thereafter, OSM entered into a sub-subcontract with B&J Enterprise of Metairie, Inc. (B&J) to assist with the roof installation.

---

[1] Bohn Motor was restoring the property in an effort to house the Odyssey House Louisiana. The project was to be funded by various sources including the New Orleans Redevelopment District. F.H. Meyers recorded the contract with the land records division of the Clerk of Civil District Court's office on December 18, 2017.

1

The contract between Bohn Motor and F.H. Meyers (Prime Contract) sets forth various provisions concerning the procurement of property insurance during the restoration project to protect the parties' interests. In December of 2017, in accordance with the Prime Contract, Bohn Motor procured a commercial builder's risk insurance policy from Navigators Insurance Company (Navigators) and Certain Underwriters in London Subscribing to Policy Number B128415396W17 (Underwriters).[2]

It is undisputed that on November 26, 2018, while the project was underway, a fire ignited causing damages to the property. Bohn Motor and its insurer paid for the costs associated with the repairs. Per the builder's risk policy, Bohn Motor's insurance claim was subject to a $10,000.00 deductible.

On November 25, 2019, Plaintiffs, Bohn Motor, Navigators and Underwriters filed a Petition for Damages claiming negligence against Defendants, F.H. Meyers, OSM, and B&J. The petition alleged that pursuant to the terms and conditions of the insurance policy, Navigators was subrogated to the all of the rights that Bohn may have had in terms of its payment under the policy.

After answering the petition, Defendants filed a Joint Motion for Summary Judgment. After a hearing, the trial court granted summary judgment in favor of Defendants and dismissed Plaintiffs' lawsuit with prejudice. This devolutive appeal follows.

---

[2] The purpose of builder's risk coverage is to provide protection for the building while it is under construction. *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 10-0685, p. 12 (La. App. 1 Cir. 12/8/10), 52 So. 3d 1103, 1110.

## ASSIGNEMENTS OF ERROR

On appeal, Plaintiffs raise five assignments of error pertaining to two issues: 1) the validity of the waiver of subrogation,[3] and 2) the dismissal of Bohn Motor's claim for its insurance deductible. While Plaintiffs assert numerous assignments of error, the only issue before this Court is whether the trial court erred in granting summary judgment and dismissing Plaintiffs' suit.

## STANDARD OF REVIEW

In accordance with La. C.C.P. art. 966(A)(3), a motion for summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). This Court reviews the granting of a summary judgment on appeal *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Planchard v. New Hotel Monteleone, LLC*, 21-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). Generally, on a motion for summary judgment, the burden of proof remains with the mover. But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(D)(1). However, if the

---

[3] Plaintiffs raise four assignments of error arguing the nullity of waiver of subrogation. In the first two assignments, Plaintiffs assert that the waiver of subrogation is null due to two provisions in the anti-indemnity statute, La. R.S. 9:2780.1, prohibiting hold harmless agreements and the purchase of insurance for the fault of another. In the third assignment, Plaintiffs argue that La. C.C. art. 2004 declares contractual provisions that limit one's liability for gross fault null and void. Last, Plaintiffs assert that the waiver of subrogation is inapplicable to OSM and B&J because they were not parties to the prime contract.

opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted. *Id.*

**DISCUSSION**

**Waiver of Subrogation**

As to the validity of the waiver of subrogation, Navigators claims to be subrogated to the rights of Bohn Motor, the owner of the building involved in the project. Thus, we begin our analysis with an examination of the rights and obligations of Bohn Motor. It is well settled in Louisiana law that a subrogee can have no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor. *Starr Surplus Lines Ins. Co. v. Bernhard MCC, L.L.C.*, 20-78, p. 5, 308 So.3d 372, 376 (La. App. 5 Cir. 12/2/20), *writ denied*, 21-00031 (La. 3/2/21), 311 So.3d 1060 (citation omitted); *Gray Ins. Co. v. Old Tyme Builders, Inc.*, 03-113, p. 5 (La. App. 1 Cir. 4/2/04), 878 So.2d 603, 607, *writ denied*, 04-1067 (La. 6/18/04), 876 So.2d 81 (citing *Travelers Ins. Co. v. Impastato*, 607 So.2d 722, 724 (La. App. 4th Cir. 1992); *State v. U.S. Fidelity & Guar. Co.*, 577 So.2d 1037, 1039 (La. App. 4th Cir. 1991). An analysis of the rights of Bohn Motor includes examination of the rights and obligations of Bohn Motor under the Prime Contract between Bohn Motor and F.H. Meyers, the general contractor.

The Prime Contract between Bohn Motor and F.H. Meyers for the renovation consists of AIA Document A101-2007, a widely-used standard form construction contract, and AIA Document A201-2007, which was incorporated by reference.[4] In the Prime Contract, AIA Document A101, F.H. Meyers agreed to

---

[4] The AIA (American Institute of Architects) promulgates a variation of this contract every decade (the most current version is A101-2017) and, as an industry standard, it is used in

provide construction services and materials to the owner, Bohn Motor, for a price of $9,480,000.00. Additionally, the general conditions for the Prime Contract are provided in AIA Document A201.[5] Document A201 details many of the rights and responsibilities of the various participants in a large construction project, including the owner, contractor, architects, and subcontractors.

Article 11 sets forth the insurance requirements for contractor's liability insurance, owner's liability insurance, property insurance, boiler and machinery insurance, loss of use insurance, waivers of subrogation, and performance bonds. Specifically, Article 11.3 requires the owner to purchase "all-risk" property insurance (commonly referred to as builder's risk insurance) to be in effect until the last payment on the Prime Contract is made or until no person or entity other than the owner has an insurable interest in the property, whichever is later. The property insurance "shall" include the interests of the owner, the contractor, subcontractors, and sub-subcontractors in the project. The required "all-risk" policy is to provide coverage against the perils of fire and physical loss or damage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal. Notably, Article 11.3.1.3 states, "[i]f the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles."

At issue in this case is the waiver of subrogation contained in Article 11.3.7, which states:

---

construction projects all over the country. Some of the terms and provisions in the contract have changed very little over the many decades since the contract was first published; as a consequence of this, and the contract's widespread usage as an industry standard, there has been extensive judicial and scholarly analysis of its terms and provisions. *C.f.*, *Starr Surplus Lines Ins. Co.*, 20-78, p. 5, 308 So.3d at 376 n. 5.

[5] As specified in AIA Document A201, the "contract" between Bohn Motor and F.H. Meyers consists of both the agreement set forth in A102, the general conditions of A201, and other drawings and documents.

**The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other**, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, **for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work**, except such rights they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described by Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. **A waiver of subrogation shall be effective as to a person or entity even though that person would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged**. (Emphasis supplied).

This clause is commonly referred to as a "mutual waiver of subrogation." In *Starr Surplus Lines Ins. Co.*, the Fifth Circuit Court of Appeal explained the practical use of mutual waivers of subrogation:

> The purpose behind such a waiver is to assure that, in instances of losses covered by the policy, the insurer is to bear the risk of loss regardless of any fault on the part of the identified parties, as well as to prevent a potential windfall to the insurer subrogated to the rights of an insured against other parties to the contract. Given the complexity of construction projects, which may involve many parties whose work creates an insurable interest in the project, shifting the risk of property losses to an insurer is desirable to prevent disputes between the parties working on the project during the course of construction.

*Id.*, 20-78, pp. 7-8, 308 So.3d at 378; *see also U.S. Fidelity & Guar. Co.*, 577 So.2d at 1039 (waiver provisions of this type reflect a clear intention to shift the risk of loss during construction to an insurer in order to avoid disputes among the parties which might cause delays in the completion of the construction).

6

In *U.S. Fidelity & Guar. Co.*, *supra*, this Court addressed the effects of the waiver of subrogation provision under similar circumstances. In that case, the State's insurer brought a subrogation action against the State's contractor and subcontractors after paying the State damages under a fire policy. *Id.*, 577 So.2d at 1038. The trial court found that the contract between the State and its general contractor contained an express waiver of subrogation provision to the extent covered by insurance. *Id.* Finding the State's insurer had no greater rights than the State, it granted a partial summary judgment in favor of the contractors. This Court affirmed. *Id.*, 577 So.2d at 1039.

As in *U.S. Fidelity & Guar. Co.*, Bohn Motor clearly waived its claims against Defendants. As such, Bohn Motor had no rights to which the insurers, Navigators and Underwriters could be subrogated. *See U.S. Fidelity & Guar. Co.*, 577 So.2d at 1039; *Travelers Ins. Co.*, 607 So.2d at 724; *Gray Ins. Co.*, 03-1136, p. 5, 878 So.2d at 607; *Starr Surplus Lines Ins. Co.*, 20-78, pp. 9-11, 308 So3d at 379-80.

In support of its argument that the waiver of subrogation is invalid, Plaintiffs raise three issues concerning: 1) the anti-indemnity statute, 2) La C.C. art. 2004, and 3) OSM and B&J's privity of contract. First, Plaintiffs argue that the waiver violates Sections B and C of the construction anti-indemnity statute, La. R.S. 9:2780.1, which prohibit hold harmless agreements and the purchase of insurance for the fault of another. La. R.S. 9:2780.1 states, in pertinent part:

> B. Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, **any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless**, the indemnitee from or against any liability for loss or damage resulting from the

7

negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control **is contrary to the public policy of this state and is null, void, and unenforceable**.

C. Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, **any provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier transportation contract or construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable.** However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract. (emphasis supplied).

In its reasons for judgment, the trial court found that the anti-indemnity statute did not nullify the subrogation waiver because indemnity agreements and subrogation waivers have separate and distinct legal meanings in a contract. We agree.

In *Fontenot*, the Louisiana Supreme Court explained the differences between an indemnification clause and a waiver of subrogation:

> The indemnification clause and the waiver of subrogation clause, when used together, fit hand in glove. They offer two distinct advantages[.] … The indemnification clause allows the … company to shift liability to the … service contractor. The waiver of subrogation supplements this shifting of liability by assuring that the … company will not be exposed to an action for reimbursement of compensation payments. When the waiver of subrogation clause is used alone, there is no shifting of liability to "supplement". And by itself, a waiver of subrogation clause does not shift the … company's liability. This shift of liability only occurs when the two clauses are used together. Thus, voiding a waiver of subrogation clause only achieves the purpose of the Anti-Indemnity Act when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause.

*Fontenot v. Chevron U.S.A. Inc.*, 95-1425, pp. 11-12 (La. 7/2/96), 676 So.2d 557, 564-65. While the *Fontenot* case involved the Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780, the Louisiana construction anti-indemnity statute

substantially mirrors the Oilfield Anti-Indemnity Act.[6]  As such, the Louisiana Supreme Court's legal analysis is analogous to this case.

Similar to *Fontenot*, the waiver, in this case, is not supplementing an indemnification clause.  Moreover, Bohn Motor was never required to obtain liability insurance for Defendants.  In fact, Article 11 of Prime Contract requires the contractor and the owner to provide its own Commercial General Liability Insurance.  As such, there was no shift in liability, rather there was an allocation of a risk.  Accordingly, the waiver of subrogation, alone, does not violate Section B or C of the construction anti-indemnity statute.

Next, Plaintiffs argue that La. C.C. art. 2004[7] renders contractual provisions excluding gross fault null and void.  Therefore, it concludes that the waiver of subrogation is invalid.  As discussed above, the waiver of subrogation does not shift liability between the parties.  Equally so, the terms of the waiver do not exclude or limit liability of any party for intentional or gross fault.  Thus, La. C.C. art. 2004 does not prohibit the enforcement of the waiver.

Finally, Plaintiffs assert that the waiver of subrogation is inapplicable to OSM and B&J because they were not parties to the Prime Contract.  They further argue that OSM and B&J were not third party beneficiaries.  We disagree.

La. C.C. art. 1978 provides, in relevant part: "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary."  Under Louisiana law, such a contract for the benefit of a third party is commonly referred

---

[6] Each statute was prompted by service providers who would otherwise be excluded from contracts, unless they absorbed the liability costs of the project owners.

[7] La. C.C. art. 2004 states, in relevant part: "Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."

9

to as a "stipulation *pour autrui*." *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 05-2364, p. 7 (La. 10/15/06), 939 So.2d 1206, 1211.

The jurisprudence sets forth three criteria for determining whether contracting parties have provided a benefit for a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. *Id.*, 05-2364, pp. 8-9, 939 So.2d at 1212. In applying these criteria, we rely on the words of Article 1978 that the contract must "stipulate a benefit for a third person." *Id.*, 05-2364, p. 9, 939 So.2d at 1212. The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party. *Id.* Each contract must be evaluated on its own terms and conditions. *Id.*

Here, the plain language of Article 11.3.7 operates as a waiver of the rights of the owner and the general contractor against each other and their subcontractors and sub-subcontractors on the project for property damage to the extent those damages are covered by insurance. The stipulation is manifestly clear, the benefit is certain and the benefit is not incidental. To that end, when procuring the required property insurance for the project, Article 11.3.1 of the Prime Contract mandates that the owner include the interests of itself, the contractor, subcontractors, and sub-subcontractors. Under the terms and conditions of the Prime Contract, OSM and B&J were third party beneficiaries. As such, the waiver of subrogation applies to them.

Given the foregoing, we find as a matter of law that the mutual waiver of subrogation clause contained in the Prime Contract precludes the Plaintiffs' claims against Defendants. Accordingly, the trial court was correct in dismissing

10

Plaintiffs' claims, to the extent they were covered under the builder's risk property insurance policy.

**<u>Bohn Motor's Claim for Insurance Deductible</u>**

As to the dismissal of Bohn Motor's claim for its insurance deductible, it argues that the waiver was not applicable to its claim for the uninsured portion of the damages. We agree. However, we find, as a matter of law, Bohn Motor was responsible for the deductible pursuant to a related clause in the contract.[8]

A contract is to be construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See*, La. C.C. art. 2050.[9] Neither should a contract be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Edwards v. Dougherty*, 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 941.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See*, La. C.C. art. 2046.[10] Courts lack the authority to alter the terms of contracts under the guise of contractual

---

[8] While Defendants did not raise the issue of the Plaintiff's insurance deductible in their motion for summary judgment, the issue was raised in the opposition brief. In particular, Plaintiffs argued that the waiver did not apply to the deductible. In response to that argument, Defendants raised the related clause, wherein Plaintiffs agreed to cover the deductible. "La. C.C.P. art. 966(F) makes clear that, in deciding a motion for summary judgment, a court can consider *only the issues raised in the motion or opposition filed by the parties. The court cannot rule on issues not raised by the parties*." *Serou v. Touro Infirmary*, 15-0747, p. 9 (La. App. 4 Cir. 4/13/16), 191 So.3d 1090, 1096. Considering the motion and opposition raised issues concerning the construction and interpretation of the Prime Contract, we find this issue to be sufficiently raised.
[9] La. C.C. art. 2050 states: "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
[10] La. C.C. art. 2046 states: "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

interpretation when its provisions are couched in unambiguous terms. *Cadwallader v. Allstate Insurance Co.*, 02-1637, p. 4 (La. 6/27/03), 848 So.2d 577, 580.

The interpretation of a contract is normally a question of law. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 749-750. Likewise, the determination of whether a contract is clear or ambiguous is a question of law. *Edwards*, 03-2103, pp. 12-13, 883 So.2d at 941. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590.

The plain terms of the property insurance clauses in the Prime Contract obligated Bohn Motor to procure property insurance, which specifically covered fire damage, in favor of itself and all of the contractors and subcontractors involved in the project. In association with the procurement of the property insurance for the involved parties, the Prime Contract requires Bohn Motor to cover the deductible. Specifically, Subsection 11.3.1.3, plainly states: "[i]f the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles." In light of these contractual provisions, it is clear that Bohn Motor, as the owner of the project, was responsible for the deductible. Accordingly, the trial court was correct when it dismissed Bohn Motor's claim to recover the deductible.

**CONCLUSION**

Upon our *de novo* review, we find that there are no genuine issues of material fact and Defendants, F.H. Meyers, OSM, and B&J, are entitled to

summary judgment as a matter of law.  Accordingly, the trial court's judgment is affirmed.

**AFFIRMED**